7   455
47   674

## M. B. LYONS v. AMANDA A. BODENHAMER.

1. OBJECTIONS TO PLEADINGS—*How waived.* An objection to a pleading, once raised by motion, is deemed to be waived if the party objecting fail to except to the decision overruling his motion.   And any objection to the misjoinder or nonjoinder of parties plaintiff, is waived, unless the defendant by demurrer or by answer specify distinctly the particular objection he intends to raise.

2. ADVERSE POSSESSION—*Claim of Title—Proof of Notice.*   Where a man purchases land from a claimant not in possession, the vendor having full knowledge of the character and value of the land, and the vendee agreeing to pay only about one-half its value, and having actual knowledge that the premises were in the possession of and being cultivated by parties who made the improvements thereon, these facts are significant of notice to the purchaser of some adverse claim and adverse claimant.

3. TRUSTS, *by implication of law.*   Where a person borrowed a land warrant, to be replaced in three months, and with it entered land in the name of the lender, and the borrower immediately went upon the land to reside with his family, and before the expiration of three months died, and his widow and heirs held uninterrupted possession

of the land, making valuable improvements thereon, and so remaining for many years without any claim for rent or the possession, and without the payment of taxes on the part of the holder of the legal title: *Held*, that upon these facts the law implies a trust, and that the holder of the legal title held the same in trust for the heirs of the person who borrowed the warrant, subject to the lien of the holder of the legal title for the value of the land warrant loaned, and the accrued interest thereon; and *held further*, that a purchaser, with notice, took the title, subject to all equities of the heirs.

### *Error from Bourbon District Court.*

ACTION brought by *Amanda A. Bodenhamer, Henry H. Hart, Mary J. Hart, John F. Hart,* and *Elizabeth Hart,* against *M. B. Lyons* and *John Clifton,* to compel the performance of a trust. The petition alleged that the plaintiffs were the children and heirs-at-law of William S. Hart deceased; that the said William, at the time of his decease, in November, 1861, was the equitable owner and was in possession of a certain quarter section of land in Bourbon county, on which the plaintiffs, and their mother, Sarah Hart, continued to reside until the decease of said Sarah, and that plaintiffs, or some of them, have resided thereon ever since, claiming said lands in virtue of their said heirship; that at the time of the decease of said William S. Hart, one William Lyons held the legal title to said land in trust for said Hart; that the defendant *M. B. Lyons,* as agent for his brother, the said William Lyons, had transacted all the business concerning said land for his brother, and with full knowledge of all the facts, and of said trust, in July, 1866, acquired title by deed from said William Lyons, and that the defendant *John Clifton,* in November, 1868, with full knowledge of the facts, and of said trust, had acquired the legal title to said land from said *M. B. Lyons;* that said defendants denied the existence of said trust, and that said Clifton

was claiming to be the owner of said lands, and was about instituting legal proceedings to obtain possession thereof; that the plaintiffs, at the decease of their parents, the said William S. Hart and Sarah Hart, were infants of tender age, and that all of them, except the said *Amanda*, were still infants, etc.; that the said *Amanda* had intermarried with one William H. Bodenhamer, who appeared as the next friend of the other plaintiffs, etc. The plaintiffs demanded judgment that the defendants, and particularly the defendant *John Clifton*, be ordered and directed to make or cause to be made the necessary and proper conveyance to pass the legal title to said lands to the plaintiffs, and for such other and further relief as should be equitable and just.

The defendants claimed that the petition stated two or more causes of action in one count, and filed a motion " to compel the plaintiffs to separately state and number their several causes of action," which motion was overruled. The defendants then demurred to said petition, assigning as grounds therefor :

" 1.–The plaintiffs have not, nor has either of them, any legal capacity to sue. 2.–There is a misjoinder and defect of the plaintiffs in the action. 3.–There is a misjoinder of causes of action. 4.–The causes of action set forth in the petition do not affect both defendants. 5.– The petition does not state facts sufficient to constitute a cause of action."

The demurrer was overruled, and defendants excepted. The defendants then answered separately—the defendant *Lyons* filing a general denial only, and defendant *Clifton* denying all knowledge of the alleged trust, and of the facts upon which said trust was based, and alleging that he had purchased the said premises in good faith and had paid therefor the sum of $800. The case was tried at the June Term, 1869, of the district court. Special

findings of fact and conclusions of law were made by the district court, all of which are substantially set forth in the opinion. The court having found that the plaintiffs were the equitable owners of the land, and that defendant *Clifton* held the legal title thereto in trust, subject to a lien and incumbrance of $325 and interest, gave judgment in favor of the plaintiffs, as follows :

"It is therefore considered, adjudged and decreed, that the said plaintiffs pay to the said defendant John Clifton, by the first day of January next ensuing, or to the clerk of this court for the said defendant, the said sum of $325, and the interest thereon at the rate of seven per cent. per annum from the 18th of July, 1866, to the time of such payment; and that upon such payment being made the said John Clifton execute and deliver to the plaintiffs, to-wit: to Amanda A. Bodenhamer, Henry H. Hart, Mary J. Hart, John F. Hart, and Elizabeth Hart, a good and sufficient deed of conveyance, conveying to the said plaintiffs, their heirs and assigns, the said lands, to-wit, the NW¼ of Sec. 1, T. 24 south, R. 22 east, and all the right, title and interest of the said defendant thereto and therein; and in default of such conveyance, that this judgment stand and operate at law and in equity as such conveyance of said lands, and all the right, title, and interest of said John Clifton thereto and therein, unto the said plaintiffs herein, their heirs and assigns. And it is further adjudged, that if the said plaintiffs fail to make such payment by the first day of January next, they be forever barred from redeeming the said lands and from setting up or claiming any title thereto or interest therein. And it is further ordered that the said parties hereto respectively pay the costs by them made and incurred herein."

Lyons and Clifton claim that this judgment is erroneous and they bring the same here for review.

*Voss & McComas*, for plaintiffs in error :

1. The court below ought to have sustained the motion of the defendants to compel the plaintiffs to separately

state and number their causes of action.   Gen. Stat., p. 647, § 88.

2. The court ought to have sustained the demurrer of the defendants.   The petition shows Wm. Lyons to have been the first owner of the land, M. B. Lyons, the second owner, and John Clifton, the third; that Clifton was the owner of the land at the time this suit was commenced; that the deed from Wm. Lyons to M. B. Lyons, and from him to Clifton, were both general warranty deeds.   If M. B. Lyons is a proper party defendant to this suit, so is Wm. Lyons, because the petition does not pretend to show any interest in M. B. Lyons, except as Clifton's grantor.   Either M. B. Lyons is an unnecessary, and hence an improper party, or Wm. Lyons was a necessary and a proper party.

3. The court below, upon the facts found, ought to have dismissed the bill for want of equity.   To sustain the decree of the district court in this case, this court must come to the conclusion that the facts as found by the court constituted Wm. Lyons the mortgagee or trustee of William S. Hart.   This could not have been a mortgage, because there was no instrument of writing of any character between Wm. Lyons and Hart.   There was no deed executed by Hart to Lyons which the court could call an equitable mortgage.   There was no note or bond given for the payment of money.   *Brown v. Dewey*, 2 Barb., 28; *Glover v. Payn*, 19 Wend., 518.

Parties themselves cannot create a trust by contract, unless it be in writing.   In this case there is no writing between them; it is a parol trust, which is forbidden by the Statute of Frauds.   Express trusts must be in writing. This cannot be a resulting trust, because the land was not bought with the money or property of Hart.   Wm. Lyons lived in Ohio; he sent the land warrant here to

his agent, to be located in his name, for him, and the agent informed Hart of the extent of his authority. William Lyons was not bound by anything Hart and his (Lyons') agent did contrary to his authority. The whole contract between the agent and Hart was a fraud upon Wm. Lyons, and cannot be set up against Wm. Lyons or his grantees.

But it may be insisted that after Hart died, M. B. Lyons recognized the rights of the heirs to the land. Suppose he did. This was long after his power as agent for Wm. Lyons had ceased, and Wm. Lyons was in nowise bound by what he did or what he did not do.

4. Looking further into the facts of this case, we find that, though the court uses the expression in its finding of facts, "borrowed the land warrant," the whole transaction as set forth in this finding by the court makes "a conditional sale," if Wm. Lyons is at all affected by it. The warrant was located upon the land as the property of Wm. Lyons, with the agreement that if Hart furnished him another land warrant within the period of three months, he, Hart, might have the land. Hart, by this arrangement, took no interest in the warrant, and only a future contingent interest in the land; it was "conditional sale," and not a mortgage. Robison v. Cropsy, 2 Edw. Ch., 138; Mason v. Moody, 26 Miss., 184; Bethlehem v. Annis, 40 N. H., 39; Perry v. Meddocroft, 4 Beav., 197; Baker v. Thrasher, 4 Denio, 493.

There was no reciprocity of rights and obligations. Whether Hart returned the warrant in three months, or not, depended upon his pleasure. Hart did not bind himself to deliver any warrant, or pay any money, but merely got a promise from Lyons' agent that "if he returned another warrant, in three months, he was to have the land." Suppose this was a contest between Wm. S.

Hart and Wm. Lyons, is it doubted that Lyons could hold this land? No fraudulent action on the part of Wm. S. Hart and M. B. Lyons can affect the rights of Wm. Lyons.

The title of Wm. Lyons passes untainted to his grantee; and the title in M. B. Lyons, being thus pure and untainted, will pass to his grantee, Clifton, unaffected by notice to M. B. Lyons, or Clifton. 1 Story's Eq. Juris., §§ 409, 410; *Bumpas v. Platner* 1 Johns. Ch. 213; *McNitt v. Logan*, Litt. Sel. Cas., 69; *Hogthorp v. Hooks, Adm'r,* 9 Gil. and J., 273; Notes to Adams Equity, p. 355: *Card v. Patterson*, 5 Ohio St., 319; *Halsa v. Halsa*, 8 Mo., 303; *Lemoy v. Pompenez* 35 Mo., 71.

5. The court bases its whole decree on the fact of the agreement made between M. B. Lyons and Hart in regard to the land warrant and the subsequent recognition by M. B. Lyons of the interest of Hart's heirs in this land. These acts of M. B. Lyons recognizing Hart's interest in this land were chiefly done while the title was in Wm. Lyons, after his agency for William had terminated, (for his power as agent was exhausted when the warrant was located,) and while he was acting as the administrator of Hart—a relation in which he stood in direct antagonism to Wm. Lyons. If Hart had no interest in the land at the time the warrant was located upon it, surely these assumptions of his administrator could create none. *Sweetland v. Sweetland*, 3 Mich., 482.

If the court should hold that Hart became absolutely the owner of the warrant when it was handed over to him by M. B. Lyons it will still be found that Hart went himself and located the warrant in the name of Wm. Lyons, and no trust could result to Hart, because the legal title to the land is taken in Lyons' name *with the consent* and by the act of Hart.. Gen. Stat,, p. 1097, §§ 6,

7, 8; Comp. Laws of 1862, p. 897, §§ 6, 7, 8; *McCartney v. Bostwick*, 32 N. Y., 53; *Garfield v. Hatmaker*, 15 N. Y., 475.

6. But if this court can hold that this transaction could be a mortgage, and that M. B. Lyons held the legal title in trust for the plaintiffs, then we maintain that the defendant Clifton is an innocent purchaser. The rule that possession is constructive notice is changed by our statute, which requires *actual* notice. Gen. Stat., pp. 185, 187, §§ 6, 21; also p. 1097, §§ 2, 3. See also *Beatie v. Butler*, 21 Mo., 313; *Dey v. Dunham*, 2 Johns. Ch. R., 182; *Jolland v. Stainbridge*, 3 Ves., 478; *Pomeroy v. Stephens*, 11 Metc., 244.

One of the peculiar features of this case is, that it is nowhere attempted to be shown that, according to the original transaction, Wm. Lyons was ever to have any interest or compensation from Hart for the use of the land warrant, or for its value. The arrangement was made wholly for the advantage and benefit of Hart, which is another circumstance tending to mark the transaction as " a conditional sale; " and none of the subsequent acts of M. B. Lyons will suffice to change its character.

*W. C. Webb*, for defendants in error:

1. Was Wm. Lyons the *trustee* of William S. Hart, holding the legal title for Hart's use? Was the knowledge of the *agent*, M. B. Lyons, the knowledge of his *principal*, William Lyons?

If the second of these questions is resolved in the affirmative, it is clear that Hart was the equitable owner of the land, and Wm. Lyons was the trustee, holding the legal title as security for the value of the land warrant loaned and advanced to Hart.

The *agency* of M. B. Lyons is positively established; and the court finds as a fact, that M. B. Lyons "loaned" the warrant to Hart. But we are answered, that Hart knew that M. B. Lyons was not authorized to loan it, but was instructed to locate it in the name and for the use of Wm. Lyons. The reply is, that M. B. Lyons declared his agency, and loaned the warrant as his brother's; and a breach of confidence (if any there was) on the part of the agent, does not change the fact that Hart *borrowed* the warrant, and it thereupon became his.

The acts and consent of the agent are the acts and consent of the principal. The sale or loan of the land warrant by M. B. Lyons, the agent, was a sale or loan by Wm. Lyons, the principal. The agent had notice that the warrant was to be located on land for the *benefit* of Hart. "Notice to the agent is notice to the principal." 1 Hilliard on Vendors, ch. 23. §§ 10, 11, and cases there cited; 1 Wash. on Real Prop., 538, and cases cited.

The land warrant, being the property of Hart at the time he located it on his land, the question is, was there, by his taking the title in the name of Wm. Lyons as a security, a *resulting trust* in said William for the use of Hart? To determine this question it is well to ascertain how it is affected by our statute concerning Trusts and Powers, passed originally in 1858, and standing unchanged to this day: Comp. Laws of 1862, ch. 209, p. 897; Gen. St. of 1868, ch. 114, p. 1097. Sections 6, 7, and 8 of this act are cited by plaintiffs in error as supporting their theory that "no trust could result to Hart because the legal title to the land was taken in Wm. Lyons' name *with the consent* of Hart." And they also cite the cases of *Garfield v. Hatmaker*, 15 N. Y., 475, and *McCartney v. Bostwick*, 32 N. Y., 53. Said § 7 relates solely to conveyances fraudulent and void as to *creditors*,

and has no application to this case; and the two cases above mentioned arose under a section of the New York statutes precisely like § 7 of our statute. In both cases the parties asserting a trust were *creditors of him who paid the purchase money;* and the court found that there was a trust in favor of the plaintiffs *as creditors*—precisely as would be done in this State under § 7 of our statute of "trusts and powers."

Secs. 6 and 8 of our statute are to be considered and construed: Gen. Stat., p. 1097. Sec. 6 is literally, and § 8 is in legal effect, as follows:

"Sec. 6. When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter, but the title shall vest in the former, subject to the provisions of the next two sections.

"Sec. 8. The provisions of the section next before the last, (§ 6,) shall not extend to (either of the following) cases, to-wit: *First*—When the alienee *shall have taken* an absolute conveyance in his own name, *without the consent* of the person with whose money the consideration was paid. *Second*—Where such alienee, in violation of some trust, shall have purchased the land with moneys not his own. *Third*—Where it shall be made to appear that, *by agreement, and without any fraudulent intent,* the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase money, or some part thereof."

The plaintiffs in error endeavor to bring this case within the *first* clause of § 8. That clause has no possible application. It provides for cases where the grantee or alienee, *by his own act,* takes the title in himself without the knowledge, or against the consent, of the person with whose money the consideration was paid. It is most obvious that the case at bar comes within the *third clause,* if, as admitted by plaintiffs in error, there was "an agreement that if Hart furnished Lyons another warrant, he

(Hart) was to have the land." The court did not find that there was such an express "agreement;" nor did the court find that no such agreement was made. But the court did find facts from which such agreement is necessarily implied; and whether it was an express or an implied agreement, it was made without any fraudulent intent, and the trust is recognized by our statute. *Mc-Donald v. McDonald*, 24 Ind., 68.

Counsel for plaintiffs in error seem to have overlooked § 1 of the act relating to "Trusts and Powers." They say: "In this case there is no writing between the parties; it is a parol trust, which is forbidden by the Statute of Frauds." Sec. 1 of the act "concerning Trusts and Powers" *controls* the Statute of Frauds. It provides that "No trust concerning lands, *except such as may arise by implication of law*, shall be created unless in writing," etc. Here was no "writing" between Hart and Lyons; and if a *trust* existed, it arose by implication or operation of law, and was a "resulting trust," and *not* prohibited by the Statute of Frauds.

The object and purpose of the third clause of § 8 of the act concerning Trusts and Powers was to save and preserve certain trusts which would otherwise be lost by the making of oral or parol agreements; because the law was, (and still is, in the absence of such provision,) that "a bare declaration of trust by parol, is inconsistent with a trust by operation or implication of law," according to the maxim, *Expressum facit cessare tacitum*. *Lord Bellasis v. Compton*, 2 Vernon, 294; *Whiting v. Gould*, 2 Wis., 552, 587. This rule is changed by our statute, and the trust is saved.

2. Wm. Lyons held the title in trust for Hart, whether there was or was not a parol agreement to reconvey to

Hart on repayment of the loan.    This trust resulted from *the transaction itself* by operation or implication of law. The transaction between M. B. Lyons and Hart was in law *a sale* of the land-warrant, on credit, to be paid for in kind.    It was *the loan* of a land-warrant, to be *paid for*, not to be *returned;* and was equivalent to a money-loan of the value of the warrant.

" If A borrows money of B to purchase land, and land is purchased with the money, and the title taken in the name of *B* as security for the payment of the money within a given time, there is a resulting trust in B, in favor of A, and parol proof is admissible to show the fact of the loan.    *When money is borrowed by A, then it becomes his,* and its investment in land it seems may be followed : " *Rogan v. Walker,* 1 Wis., 591-2, (527, 578;)  *Whiting v. Gould,* 2 Wis., 552, 596-7 ; *Boyd v. McLean,* 1 Johns. Ch. R., 582, 585; Hill on Trustees, 91; Story's Eq. Jur., § 1201; 2 Wash. on Real Prop., 172, par. 15; *Lyford v. Thurston,* 16 N. H., 406; *Brown v. Dwelley,* 45 Maine, 52; *McLenan v. Sullivan,* 13 Iowa, 521, 525; *Kelley v. Jenness,* 50 Maine, 464; *Sunderland v. Sunderland,* 19 Iowa, 328; *McDonald v. McDonald,* 24 Ind., 68; *Howell v. Howell,* 15 N. J. Eq. R., 77; *Millard v. Hathaway,* 27 Cal., 139; *Baumgartner v. Guessfield,* 38 Mo., 36, 41.

The cases in 1 Johns. Ch. R., 585, 27 Cal., 139, and 1 Wis., 527, are like the case at bar in this, that the money which paid for the land *had been borrowed of the trustee* by the plaintiffs, and the title taken in the name of the trustee to secure the repayment of the loan.

The cases cited are conclusive upon the question that there was a trust in Wm. Lyons, in favor of Hart.

But the plaintiffs in error contend that the land war-rant was the property of Wm. Lyons, when it was located ; "that the whole contract between *the agent* and Hart, was

a fraud upon Wm. Lyons," etc. There was no fraud, no surprise, no mistake on the part of Hart or his heirs. Hart was to pay for the warrant by *another* warrant, in three months, and before that time had elapsed, he died—leaving his widow and children actual occupants of the land. M. B. Lyons, the agent, had actual knowledge of all the facts. He treated the land as Hart's; he never claimed it for his principal; he never demanded rent; never demanded nor tried to obtain possession. He paid taxes on the land for four years, taking receipts in the name of Hart's widow, and charged the amounts so paid to the estate of Hart after obtaining a deed of the land to himself. It cannot be said that the agency of M. B. Lyons ceased so long as the title remained in Wm. Lyons; and there is no proof that Wm. Lyons ever repudiated the acts of M. B. Lyons; nor that he ever claimed the land as his own, except as he conveyed it to his agent, M. B. Lyons.

3. Wm. Lyons being chargeable with the trust in favor of Hart, his grantee, M. B. Lyons, who purchased with full knowledge of the trust, and of the facts from which it arose, is also chargeable : 2 Wash. on Real Prop., p. 177, § 21; and p. 202, § 25, and cases cited.

" All agents are, in a certain sense, trustees; and all trustees agents :" 1 Hill. on Vendors, 372, par. 6. So, if Wm. Lyons were not chargeable as trustee for want of notice, still M. B. Lyons would be liable. " If a *trustee* repurchase the estate from a purchaser without notice, *the trust will* revive, as a charge upon the land, in his hands : " 1 Hil. on Real Prop., 340, par. 19; *Bovey v. Smith*, 1 Cruise, 526.

M. B. Lyons himself treated the land as belonging to Hart. He knew it was occupied and claimed by the widow and children of Hart. He was chosen adminis-

trator of Hart's estate; be inventoried and leased the property as belonging to said estate; he paid taxes on it in the name of the widow, and charged the same up against the estate in June, 1867. He took a deed in his own name in July, 1866, and fraudulently kept it a secret for more than two years, and until after his pretended sale to Clifton! These acts constitute fraud in law, and create a trust in M. B. Lyons in favor of the infant heirs, whose rights and interests he was bound to protect.

" Conveyance of an estate to B, the money being paid by A., B. is a trustee, and C., taking from him, *with notice of the payment by A.*, would also be a trustee:" 15 Vesey Rep., 350. " It is a rule in equity, that if one come into possession of trust property, *with notice of the trust,* he shall be considered as trustee, and, with respect to that property, is bound to the execution of the trust:" 1 Clark, 464; Hoff., 192; 2 Wis., 577. And whenever a party, as agent, attorney, sheriff, executor, administrator or guardian, is entrusted *with the property* of another, he is not allowed to purchase such property for his own benefit, either directly or indirectly. 1 Hil. on Vendors, p. 374, par. 10; p. 378, par. 16, 17; p. 383, par. 24, 25, 26, 27, 28. And in all such cases there is a resulting trust in the purchaser for the use of the equitable owners.

4. There being manifestly a trust in M. B. Lyons, for the use of the plaintiffs below, did *John Clifton* purchase with knowledge of that trust? The court below found as a fact, that the defendants in error had actually resided upon the land, cultivated it, and made their home thereon, from and since March, 1866, and were actually residing thereon at the date of Clifton's purchase. Said court also found that Clifton had *constructive notice* of the claim and title of defendants in error to and in said land; that he had *actual knowledge* of the residence thereon of W.

H. Bodenhamer, and *actual notice* that the heirs of Hart claimed some title and interest therein.   The court also finds, that at the time of Clifton's pretended purchase there were about fifty acres of said land enclosed and under cultivation, a dwelling house, stable and other out-buildings on the same; and that the lands were worth $1,500—while Clifton pretended to pay only $800, and paid in fact only $350, and " secured the balance " by an *unrecorded* mortgage on the lands!   And Hart, his widow, and heirs, made all the improvements, and erected all the buildings on said lands.

Upon these facts it cannot be doubted that Clifton purchased with knowledge of the trust, or with knowledge of the facts from which the trust arises, and that he is chargeable as trustee.

The opinion of the court was delivered by

KINGMAN, C. J.: The defendants in error, plaintiffs below, are the children and heirs-at-law of William S. Hart, who died in November, 1861.   In October, 1861, Hart borrowed from the plaintiff in error, M. B. Lyons, a land warrant belonging to his brother William Lyons, of Ohio, and located it upon a certain quarter section of land in the name of said William Lyons.   It was borrowed to be replaced by another warrant in three *weeks*, and if he did not replace it in three *months*, then the land was to belong to William Lyons.   M. B. Lyons was the agent of William as to the warrant; but it seems that M. B. Lyons had no authority to make such a disposition of the warrant, and that Hart was made aware of that fact when he borrowed it.   The land was so entered in pursuance of an agreement between M. B. Lyons and Hart, and the certificate of location was delivered to M. B.

Lyons, who retained it until after the expiration of three months after the location, and then transmitted it to William Lyons, in the State of Ohio. The legal title to the land remained in William Lyons until the 18th of July, 1866, and on that day he and his wife by deed of general warranty conveyed the land to M. B. Lyons. This conveyance was duly filed for record on the 24th of November, 1868. On the 7th of November, 1868, M. B. Lyons conveyed the land by deed of general warranty to plaintiff in error John Clifton, which deed was filed for record on the 24th of November, 1868. Hart having died one month after he borrowed the warrant, and without replacing it, his family consisting of his widow and her children, the defendants in error, continued to reside on the land until the death of his widow in March, 1863. After the death of the widow, and until the 19th of March, 1866, the said land was occupied by tenants holding under contracts with the administrators of said Hart. Subsequently to the 19th of March, 1866, Amanda A. Bodenhamer, eldest daughter of said Hart, and her husband, and Henry H. Hart, son of Hart deceased, occupied said land and cultivated it up to the time when this action was decided in the court below, claiming it all the time as the children and heirs-at-law of William S. Hart deceased. The other defendants in error, Mary, John, and Elizabeth Hart, minor children of William S. Hart deceased, made said place their home, but not residing continuously thereon; and the Bodenhamers and Henry H. Hart were living upon the land when Clifton bought it. On the 14th of March, 1863, M. B. Lyons was appointed administrator of the estate of William S. Hart, and joined in a lease of said land, after his appointment, whereby said land was leased as land belonging to the estate; and while he was acting as the administrator he

always treated the land as belonging to the estate of William S. Hart, up to the 22d of June, 1867, at which time, and nearly a year subsequently to the deed from William Lyons to himself, in an account filed in the probate court of said county, in his settlement as administrator he charged said estate with the taxes on said lands paid by him for the years 1862, 1863, 1864 and 1865, three of the receipts for which were taken in the name of Sarah Hart. One of the facts found by the court below was as follows: " That John Clifton at the "time of his said purchase of said lands from M. B. " Lyons, had constructive notice of the claim and title of " Hart's heirs in and to the said lands; that he had " actual knowledge of the residence thereon of said Wil- ": liam H. Bodenhamer; and that he had actual notice " that the heirs of William S. Hart claimed some title " and interest to and in said lands." M. B. Lyons paid his brother $325 for the land, and Clifton paid M. B. Lyons $350 in hand, and gave his note for $450 more, for the land. The note was secured by mortgage on the land, which mortgage has never been recorded. The lands were worth $1,500 when Clifton purchased. Neither of the Lyons ever asked for another warrant in lieu of the one loaned to Hart. Neither of them ever claimed rent, nor did they ever notify the widow or heirs to leave the land, or make any effort to obtain possession. The land warrant when loaned was worth $160. The case was tried by the court, and the foregoing is a brief synopsis of the findings of fact by the court. As conclusions of law the court found as follows:

"1st. That the plaintiffs herein, as the heirs-at-law of said William S. Hart deceased, are in equity the owners of said lands in the said petition of the plaintiffs set forth, and that said lands are charged with and subject to a lien and incumbrance of $325, and interest thereon at the

rate of seven per cent. per annum from the 18th of July, 1866, in favor of the holder of the legal title thereto.

"2d. That the said defendant John Clifton has the legal title to said lands; that he acquired the same with notice of the plaintiffs' equitable title thereto, and that he holds the same in trust for the said plaintiffs.

"3d. That the said legal title to the said lands ought to be conveyed to the said plaintiffs by the said defendant John Clifton, upon the payment to the said John Clifton by the said plaintiffs of the said sum $325, and interest as aforesaid."

The district court gave judgment for the plaintiffs below, in accordance with said findings and conclusions of law; and this court is asked to reverse the judgment and dismiss the petition.

Before entering upon the main questions involved in the record, it becomes necessary to consider and settle two points made by the plaintiffs in error. Before answering they made a motion to compel the plaintiffs to separately state and number their causes of action in the petition. This the court refused to do, and probably correctly; but no exception was taken to the ruling of the court, and therefore if it was error it was waived. Again, the plaintiffs in error claim that their demurrer should have been sustained to the petition because there was a misjoinder of defendants in this, that William Lyons was a necessary party, or, if not, then M. B. Lyons was an improper party. But an examination of the demurrer discloses the fact that the demurrer did not make the misjoinder of parties defendant one of the grounds thereof; so that this alleged error does not really exist.

*1. Objections to pleadings, how waived.*

It is also claimed that the finding of the court as to the notice to Clifton of the claim of Hart's heirs, as above set forth, is not justified by the evidence. The testimony on this point is embodied in the bill of exceptions; and it appears from the testi-

*2. Adverse possession; claim of title; proof of notice.*

mony of Bodenhamer that while he was living upon the
land, Clifton and his son came to look at the land and
asked him if he wanted to sell it. Bodenhamer said,
"No, he had no right to sell as it belonged to Hart's
heirs." This conversation was in September 1868, and
before Clifton bought the land, and was on the premises
which were then occupied by Bodenhamer as the hus-
band of one of the heirs of Hart. The improvements
made by Hart, his widow, and heirs, were visible. It is
true, that Clifton, while admitting the visit to the premises
denies any mention by Bodenhamer as to the title, or
any claim of Hart's heirs. If the issue rested here, we
should be compelled to uphold the finding of the court
below, on well-known and firmly settled principles; but
the fact does not rest on so well-balanced testimony
alone. Bodenhamer and Clifton had other conversations
after Clifton purchased. So far as Bodenhamer claimed
the land for Hart's heirs, in these conversations, it was
no notice. But in one of these conversations, Boden-
hamer, according to his own testimony, asked Clifton "if
Lyons, when he sold him the land, did not tell him that
the heirs of Hart were living on the land, and claiming
it." Clifton answered "it did not make any difference
about that; he knew all about that, before, and it did
not make any difference; that his title was good." This,
Clifton as positively denies; but Mr. Northway, who
heard this conversation at Mapleton, fully corroborates
Bodenhamer. With this testimony, and the intrinsic
evidence of the facts themselves, we are left in little
doubt that the finding of the court is abundantly sup-
ported by the evidence, that Clifton purchased with
notice of the claim of Hart's heirs to the land. Whether
he had a correct idea of just what that claim was, how it
originated, and what was its value in law, is very doubt-

ful; but that he knew that the land was occupied by Hart's heirs, that the improvements were made by Hart and his heirs, claiming a right of possession and title in some way, there can be no doubt. The simple fact that he purchased the land of a man familiar with its value, for about half its value, with deferred payments large enough to cover any possible loss, should the title he obtained prove defective, is significant of notice of some adverse claimant thereto. Further; when a man purchases land occupied by another, he is apt to inquire how it is held, and when and for what reason he may obtain possession. Concurring then in the conclusion of the court below, that Clifton purchased with notice, he stands in no better attitude than M. B. Lyons. He knew Lyons' title, what equities existed in favor of Hart's heirs, and must be adjudged to hold the same title that M. B. Lyons had, and no better. What that title exactly was, it may be more difficult to define, by a set formula, than to comprehend.

The land warrant was "loaned" by the agent, M. B. Lyons, and was "borrowed" by Hart. These are facts found by the court—on what testimony we do not know, as the record does not disclose, as it does not show the evidence on any point save the notice to Clifton. Where there is a loaning and borrowing, secured by a lien on real estate, the transaction is usually a mortgage, and is generally so held, even if the contract in terms does not make it so; thus, a deed in fee simple is held a mortgage if the court can ascertain that the consideration of the deed was money loaned, and the land is only held as security. In this case there would be no difficulty in holding the transaction a mortgage if Hart, at the time of the entry, had held the title to the land. The title was still in the gov-

3. TRUST; implication of law; what facts create.

ernment; and his possessory right was held in subordin--
ation to the right of the government to dispose of the
land. There is an unerring indication of what the par--
ties believed the transaction to be. William Lyons held
the legal title, yet he did not pay the taxes, did not ask
possession, or rent, for more than five years; and on the
18th of July 1866 sold the land to his brother and agent
for $325. How M. B. Lyons considered the title is fully
shown: He rented it as belonging to the estate; he
charged the estate with the taxes; and when he became
the holder of the legal title, he withheld it from record
for over two years, and until after he had sold it. It is
worthy of remark that, as administrator, he charged the
estate, in a settlement thereof, with the taxes on the land
nearly a year after he became the owner thereof. At
that time he evidently held the legal title as security for
the amount of the land warrant loaned to Hart. To in--
fer otherwise would be to suppose that his purpose was
to violate a trust he was administering as a sworn duty,
and against infant children little acquainted with and
less able to protect their rights. We will not do him
this wrong. The original transaction, then, being a loan,
and so regarded by the parties, and each acting with
confidence in the honesty and integrity of the other, the
legal title was to be held as security by the party making
the loan until he was made good by the borrower. There
is no reason to doubt that the whole business would have
been closed up as agreed, had not the death of Hart,
within a month, prevented him from carrying out his
agreement. The judgment of the court below was in
exact conformity with this arrangement of the parties, as
near as the condition of things rendered possible; and it
is a judgment that commends itself to the sense of justice
of every individual, and we think is upheld by the prin--

ples of law. We have seen that the transaction was not a mortgage in the correct acceptation of that term. There was no writing between the parties; therefore there was no express trust: Sec. 1, p. 1096, Gen. Stat. But we think there was plainly and fairly a trust which resulted from the transaction itself by implication of law. Such a trust is not necessarily in writing, but most generally must arise from the act of the parties. In this case the court has found that Hart "borrowed" the land warrant, to be replaced in three months. It was then his; he was not to *return*, but to *replace* it; the security therefor being that William Lyons was to hold the legal title to the land till the land warrant was replaced. This state of facts the plaintiff in error claims brings the case within the provisions of § 6 of ch. 114, Gen. Stat., and vests the title in William Lyons, free from any trust to Hart or his heirs. This might be the case did not that section make its provisions subject to the provisions of the two next sections, one of which is as follows:

"SEC. 8. The provisions of the section next before the last shall not extend to cases * * * where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase money, or some part thereof."

Now it can hardly be denied that the agreement between Hart and M. B. Lyons comes fairly within this last quoted clause of § 8, if it be admitted that the land warrant was *loaned* to Hart. The force of this was felt by the learned counsel for the plaintiffs in error, who sought to evade its force by contending that the warrant was not loaned at all, as it does not appear that William Lyons knew of the transaction. Still, it was a *loan*, and it is so found by the court. It is true that the court also finds

that William Lyons did not know of the transaction at the time; but his agent did, and made the arrangement with Hart, understandingly.   The principal has confirmed the action of his agent, for although he lived all the time in Ohio, and it is found by the court that he had no knowledge of the terms of the loan of the land warrant to Hart, otherwise than is shown by the findings of the court, yet the facts, as found, that he paid no taxes, while he owned the land up to July, 1866; that he claimed no rent; that his brother, who bought it at a very low price, rented it as belonging to Hart's estate, hardly leave room for believing that he did not know all about the trade.   His agent had full notice; and it would hardly be questionable that he did not give his principal some definite information of how he became the owner of the land.   If this be so, he has ratified the loan of the warrant by claiming to hold the legal title obtained through and by means of that loan.   But while we have much confidence in holding that Wm. Lyons held the title in trust by express agreement under the third clause of § 8 of statute " concerning trusts and powers," passed in 1858, and remaining unchanged, still we can with certain assurance hold that, if there was no express agreement that Lyons should hold the title in trust for Hart, that then there was a trust arising by implication of law, out of the whole arrangement between the parties.   Suppose Hart had lived, and within the three months had replaced the land warrant, and it had been accepted by M. B. Lyons, the agent, could William Lyons have been compelled to surrender the legal title to the land to Hart? Certainly, a court in the exercise of its equity power would have compelled him to do so, and because he held it in trust, and good faith required it; and this conclusion marks the character of the arrangement when it was

made, and that character is not changed by the lapse of time, or by the acts of the parties. Hart was bound to replace the warrant, by his agreement, land, or no land. He had some interest and some right in the land. The counsel for plaintiffs in error, knowing this, says it was a "conditional sale." This suggestion is disposed of when we consider that Lyons had no land to sell until after the contract was made and the warrant had become Hart's by the loan thereof to him. Two cases strikingly illustrative of this case are cited in the brief of defendants in error: *Boyd v. McLean*, 1 Johns. Ch. R., 582, and *Millard v. Hathaway*, 27 Cal., 139. In each of these cases the money which had been paid for the land had been borrowed of the trustee by the plaintiff, and title taken in the name of the trustee to secure the repayment of the loan; and in each of the cases the borrower of the money had never had the money in his possession, it going direct from the trustee to the vendor; and in each of the cases there was no written agreement between the parties; and in each of them, as in this, did the trustee deny the trust and claim the land. In neither of the cases did the plaintiff make out as strong a case as Hart's heirs have, and yet in both the defendants were held as trustees, and compelled to surrender the legal title. Further authorities are found in support of this point in defendants' brief. We are sure that good conscience, fair dealing, and the law, all require that the judgment be affirmed.

All the Justices concurring.