## A. J. Utley v. J. H. Fee, et al.

1. Courts and Officers—*Acts Presumed Valid.* In all cases it must be presumed, where nothing appears to the contrary, that the acts of public officers and of courts are valid; and therefore where a decree of the district court of Osage county, Kansas, is rendered, quieting title in favor of a person who holds under a tax deed and against two persons who hold the original patent title, and nothing is shown that would render the decree invalid, *held,* that the decree must be considered as valid. *And further held,* That such decree will vest in the tax-title holder all the titles held by all the parties.

2. Title; *Action to Quiet; Effect of Decree.* And in such a case, where the original patent title appears, from the records of the county, to be still in the original owners, except for such tax deed, and the tax-title holder, who is also the plaintiff in the case, has no knowledge or notice of any other claim of title, and no person is in the possession of the property holding adversely to him, *held,* that the decree quieting the title in his favor will quiet his title as against all persons holding title under the original owners by deeds previously executed but not yet recorded.

3. ——— *Deed; Actual Possession; Title.* And although the persons holding title under the original owners, by deeds previously executed but not yet recorded, may, after such decree, take the actual, visible and notorious possession of the property, yet the plaintiff may nevertheless sell the property and convey the same to any person who may choose to purchase, and may convey his entire estate by a quitclaim deed.

*Error from Osage District Court.*

Ejectment, brought by *Utley* against *Fee* and another. Trial at the October Term, 1883, and judgment for costs against plaintiff. He brings the case here. The opinion states the facts.

*A. J. Utley*, plaintiff in error, for himself.

*D. S. Alford*, for defendant in error Fee.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of eject-
ment, brought in the district court of Osage county, Kansas,
by A. J. Utley against J. H. Fee and W. W. Cockins, to re-
cover certain real estate situated in said county. Utley's title
is founded upon a tax deed executed by the county clerk of
Osage county to C. L. Flint; a judgment quieting the title to
the land in favor of Flint and against H. D. Fisher, the orig-
inal patentee from the United States, and E. D. Hammond,
and a quitclaim deed from Flint to the plaintiff, Utley. Fee's
title is founded upon a chain of title from Fisher down to Fee
himself, and the actual, visible and exclusive possession of the
property by Fee. Cockins has no interest in the property,
except as the agent of Fee. As dates and some other matters
are of importance, we shall here give them as follows: August
25, 1869, Fisher conveyed the property to Hammond; May
5, 1874, the property was sold for the taxes of 1873 to Flint;
February 2, 1875, Hammond conveyed the property to Henry
E. Benson; July 20, 1877, the county clerk of Osage county
executed a tax deed to Flint, which tax deed was recorded the
same day; September 19, 1877, Benson conveyed the property
to Mrs. P. A. Griffith; October 28, 1878, the property being
vacant and unoccupied, Flint, by an action in the district court
of Osage county, Kansas, quieted his title against Fisher and
Hammond; May 7, 1880, Mrs. Griffith and her husband ex-
ecuted a quitclaim deed for the property to the defendant Fee;
July 26, 1880, Fisher executed a quitclaim deed for the prop-
erty to Fee, and the deed was recorded on October 26, 1880;
March 1, 1881, the defendant Fee, by his agent, Cockins, took
possession of the property and inclosed the same with a fence.
Prior to that time it had been vacant and unoccupied, and
since that time Fee has been in the actual, visible and exclusive
possession thereof, though no one has ever resided upon it;

July 17, 1882, Flint executed a quitclaim deed for the property to the plaintiff, Utley, and the deed was recorded on August 12, 1882.

August 15, 1882, Utley commenced this action of ejectment against Fee and Cockins, obtaining proper service of summons upon Cockins, in Douglas county, Kansas, where he resided, but did not obtain or attempt to obtain any service of summons upon Fee, except by publication and as a non-resident of the state of Kansas, although Fee at the time and for several years prior thereto, and since, up to the present time, resided in Lawrence, Douglas county, Kansas. The answer-day under the publication notice was fixed for September 28, 1882. No summons was ever issued in the case against Fee; October 26, 1882, the deed from Hammond to Benson was duly recorded; November 15, 1882, the deed from Fisher to Hammond was duly recorded; November 23, 1882, the deed from Benson to Griffith was duly recorded; April 4, 1883, Fee voluntarily appeared in this action and answered to the plaintiff's petition; October 5, 1883, the deed from Mrs. Griffith and husband to Fee was duly recorded; October 6, 1883, the second and final trial in this case was had before the court without a jury, and the court made special findings of fact and a conclusion of law; November 2, 1883, the plaintiff Utley moved for a new trial, which motion was overruled and judgment was rendered in favor of the defendants and against the plaintiff for costs; February 11, 1884, the case for the supreme court was duly settled, signed and authenticated; August 21, 1884, such case with a petition in error was filed in the supreme court by Utley, who asks that the judgment of the district court shall be reversed.

None of the evidence introduced on the trial of the case has been brought to this court, but the findings of the court below have, and from them the foregoing facts of the case appear. It also appears from such findings that the tax deed upon which the plaintiff partially relies is at least voidable; but whether it is absolutely void, or not, or whether it is void upon its face, or not, is not expressly shown by the record.

It also appears from the findings that the deed executed by Fisher to the defendant Fee, on July 26, 1880, was executed "without consideration, and for the purpose of making an apparent chain of title from the United States to Fee;" and this was done for the reason that the prior deeds in the chain of title from Fisher to Fee had "been lost, and the grantors removed from the country into parts unknown." The deed itself, however, contains no reference to any lost or unrecorded deed. With reference to the decree quieting title in favor of Flint and against Fisher and Hammond, and the action in which such decree was rendered, it is not shown what the issues were, or what the plaintiff alleged in his petition, or what kind of service of summons was made upon the defendants, or whether the defendants made any appearance in the case, or not, or whether the decree was rendered upon default, or not. It however seems to be admitted by the parties, that the decree was founded solely upon Flint's tax deed; but what was alleged with regard to the tax deed, or with regard to possession under it or adverse to it, is not shown. The defendants state in their brief, that the decree was in fact rendered upon service by publication only, and upon default. We however must decide the case upon the record brought to us.

We suppose that if the plaintiff had no other title than his tax deed, he would not claim title; for, as before stated, the tax deed is at least voidable, and if it were standing alone it might be avoided by any person having any interest in the property. But the plaintiff also claims title upon other grounds: First, upon the decree quieting title in favor of Flint and against Fisher and Hammond; and second, upon his purchase of Flint's title without any actual knowledge of Fee's title or of any of the unrecorded deeds in the chain of title from Fisher to Fee. And he claims title upon these grounds for the following reasons: First, Flint quieted his title against Fisher and Hammond, the only persons who at that time had any record title adverse to Flint's title, and no one at that time had any adverse possession; and Flint thereby obtained all the title and interest which Fisher and Ham-

mond at that time or previously possessed. He claims that under § 21 of the act relating to conveyances, all the unrecorded deeds executed by Fisher and Hammond and others were void in law and in equity as to Flint and as to Flint's assignees; and that the placing of such unrecorded deeds on record afterward would not render them valid by relation or otherwise as to Flint or his assignees. Second, he further claims that when he purchased the property, Fee's possession of the same was no notice to him of such unrecorded deeds, or of any unrecorded deed, and was no such fact or circumstance as would put him upon inquiry with reference to Fee's unrecorded title or interest; and this he claims, for the reasons — first, that when Fee put his deed from Fisher to himself upon record and left the other deeds unrecorded, it must be presumed that he abandoned every other source of title which he then had; and second, that by such acts Fee is estopped from asserting any other title or interest as against any person who may have innocently and in good faith acquired rights, interests or equities in or to the premises, relying upon the records as made by Fee himself. In other words, Utley claims that as Fee put one title upon record, all persons not knowing that he had any other title had the right to assume, and to act upon the assumption, that Fee had no other title.

Upon the other side, the defendant Fee claims the reverse of what the plaintiff Utley claims. He claims that the decision in this case depends largely, if not entirely, upon the validity or invalidity of the aforesaid tax deed, which as he claims is not only void, but is also barred as to Fee by a two-years statute of limitations; that the decree quieting title is also void under the decision in the case of *Hart v. Sansom,* 110 U. S. 151, for the reason that no service of summons was made upon the defendants in the action quieting title except by publication, and no appearance was made in the case; also, that the decree quieting title is void for the reason that the plaintiff was not in the possession of the property at that time or any other time, (*Pierce v. Thompson,* 26 Kas. 714;) that when the plaintiff purchased the property

the defendants were in the actual, open, visible, notorious and exclusive possession; and that Utley was required to take notice of all their rights and interests; and that Utley procured his interest in the property only by a quitclaim deed, and therefore could not be an innocent and *bona fide* purchaser.

For the purposes of this case, we shall assume that the tax deed is valid upon its face, for nothing has been shown to the contrary. We shall also assume, for the purposes of this case, that the decree quieting the title to the property in Flint is valid as against Fisher and Hammond, for nothing appears to the contrary. And in all cases it must be presumed, where nothing appears to the contrary, that the acts of public officers and of courts are valid. There is nothing shown in this case sufficient to bring it within the decision in the case of *Hart v. Sansom*, 110 U. S. 151, or the decision in the case of *Pierce v. Thompson*, 26 Kas. 714. While it is true that a person who is not in the actual possession of real estate by himself or tenant cannot quiet his title under § 594 of the civil code, (*Pierce v. Thompson*, 26 Kas. 714,) yet if he holds the legal title, and the premises are vacant and unoccupied, he may maintain an action to quiet his title independent of said section. (*Douglass v. Nuzum*, 16 Kas. 515.) And in this case we must assume that enough was alleged and proved in the case quieting Flint's title against Fisher and Hammond to render the decree valid, whatever may be the real facts of the case; and, assuming the decree to be valid, then of course Flint, when he obtained the decree, obtained all the estate and interest, legal and equitable, which Fisher and Hammond may at that time have had in the property. (*Belz v. Bird*, 31 Kas. 139, 143.) The two titles were then merged, and Flint, in addition to his original title, also held Fisher and Hammond's record title, and stood in their place.

But the difficult question now arises, What effect did the decree quieting Flint's title have upon the titles of the several grantees of Fisher and Hammond, who held no evidences of title except unrecorded deeds? We would think that it virtually destroyed their titles and rendered them ineffectual and

void. Indeed, at the time when the decree quieting Flint's title was rendered, the unrecorded deeds held by the grantees of Fisher and Hammond were void as against Flint, without any decree of any kind, (Comp. Laws of 1879, ch. 22, relating to conveyances, § 21;) for such deeds had never been recorded, and there is no claim that Flint had any actual notice of them, or notice of any fact that would have put him upon inquiry; and the holders of the deeds were not in the possession of the property. Many authorities might be cited supporting these propositions, but it is not deemed necessary to cite them. And the deeds being void, they cannot in and of themselves, or separate and alone, so operate as to constitute the foundation of any kind of title or estate, legal or equitable. While it is true that unrecorded deeds, with visible, open, notorious and exclusive possession in the grantee, constitute an equitable estate, and constitute such notice as will put subsequent purchasers and others upon inquiry, yet an unrecorded deed, separate and alone, and without any additional fact or circumstance to aid or assist it, constitutes no notice, but is an utter nullity except as between the parties thereto. The title and estate of a person holding an unrecorded deed is as to third persons without notice, wholly in the grantor, and the grantee is in privity with its grantor, and any decree rendered against the grantor affecting the grantor's title is also in effect a decree rendered against the grantee, and it equally affects his title; and the decree is *res adjudicata* as to the interests of all.

In the present case, when Flint quieted his title against Fisher and Hammond, the only title that could be considered as adverse to Flint's — having reference to our registry laws — was the record title of Fisher and Hammond; and Flint, by his decree quieting his title against Fisher and Hammond, procured this record title from them. Now if Fisher and Hammond's grantees can ever afterward procure any title by recording their previously unrecorded deeds, from whom will they obtain it? They cannot procure it from Fisher or Hammond, because Fisher and Hammond's title has already passed

44—33 KAS.

to Flint; and we hardly suppose it will be claimed that they can procure it from Flint. Where a deed is recorded a long time after its execution, it probably takes effect, as to innocent third persons without notice, at the same time that it would if it were executed and recorded on the day on which it is recorded. (*Norton v. Birge*, 35 Conn. 250. See also *Cameron v. Marvin*, 26 Kas. 627, 628; *McVay v. English*, 30 id. 371.) After Flint procured his decree quieting title against Fisher and Hammond, we think that all titles were merged in him.

This virtually disposes of this case, for although Fee was in the possession of the property when Utley procured his title, and although Utley procured such title by a quitclaim deed, yet we think he obtained all the title which Flint possessed. It is true, that possession, with a claim of ownership, is evidence of title, (*Gilmore v. Norton*, 10 Kas. 491, 505, 506; *Mooney v. Olsen*, 21 id. 691, 697;) and if the possession is actual, visible, exclusive, and notorious, it is sufficient to put all persons upon inquiry. (*Lyons v. Bodenhamer*, 7 Kas. 455; *Johnson v. Clark*, 18 id. 157; *School District v. Taylor*, 19 id. 287; *Greer v. Higgins*, 20 id. 420; *Tucker v. Vandermark*, 21 id. 263; *McNeil v. Jordan*, 28 id. 7.) But such possession is only *prima facie* evidence of title, and only of title generally, and is not evidence of any particular title, or of any particular kind of title. (*Gilmore v. Norton*, 10 Kas. 491.) It is merely evidence of some kind of title, or estate, or interest, or equity in the person in the possession of the property; and it is sufficient evidence to put all others upon inquiry. But there are exceptions to this general rule. The rule is never extended so far as to enlarge the estate or interest of the party in possession, or to give him more than he actually owns; or at least this is true until some statute of limitations has completely run in his favor and given him all the estate that he claims. And where a party is in the possession of real estate, and has two or more titles, each founded upon a separate written instrument, *each capable of being recorded under the registry laws*, and such party has one of his titles recorded and fails to have the others recorded, and his possession is consistent with his recorded title,

there would be some reason for holding that he abandons and loses all the titles which he does not have recorded, as against persons who subsequently and in good faith procure rights or interests in or to the property. (2 Pomeroy's Eq. Jur., § 616, and cases there cited.)   This applies to titles which are capable of being recorded, and not to titles which cannot be recorded. But whether the foregoing proposition is true, or not, there is no rule that prevents any person from purchasing a title from the owner out of possession, and a title which the party in possession does not own.   There is also much reason for holding that a person who procures a title by virtue of a quitclaim deed cannot be considered as an innocent or *bona fide* purchaser. (Martindale on Conveyancing, §§ 56, 285, and cases there cited ; *Richards v. Snyder*, decided by the supreme court of Oregon, February 19, 1885; 6 Pac. Rep. 186.)

But, as heretofore stated, there is no rule that will prevent a purchaser who takes a quitclaim deed from procuring all the title which his grantor at the time possesses.   A quitclaim deed is as much a conveyance as any other kind of deed, and it will convey what the grantor has just as well as any other deed.   It is generally held, however, that a quitclaim deed will convey nothing more than what the grantor actually owns ;. while a general warranty deed, with all the usual covenants, may sometimes convey to an innocent and *bona fide* purchaser more than the grantor owns, and all in fact that he may seem to own from the records.

We do not think that it is necessary to consider the other points presented by counsel.   Flint's tax deed was not barred by any statute of limitations when he quieted his title, and since then Flint and the plaintiff Utley hold under Fisher's. original patent title as well as under the tax deed ; and it really makes no difference whether the tax deed, independent of the decree quieting title, be considered as valid or void, barred or not barred.   The decree is valid, and that is sufficient.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in

favor of the plaintiff and against the defendants for the recovery of the land and for costs.

All the Justices concurring.