Mo. River, Fort Scott & Gulf R. R. Co. v. Risden Owen.

1. Condemnation of Lands; *Appeal from Assessment of Damages; Approval of Bond.* The county clerk is the proper officer to approve the appeal bond given by the land-owner who appeals from the decision of the county commissioners as to the appraisement and assessment of damages to land appropriated by a railroad company for a right of way.

26—8th Kas.

Gulf Railroad Co. v. Owen.

2. TITLE OF ACTION, *on Appeal; Practice.* It seems that such an appeal is properly entitled by making the apellant plaintiff and the Railroad Company defendant. But if such entitling be incorrect, the error is not a cause for dismissal of the appeal.

3. AMENDMENT; *Signing Pleading.* After the jury was empaneled to try the case, the court permitted the appellant to sign his petition, and refused to give the defendant time for further answer because of said signing: *held,* that there was no error in the ruling.

4. EVIDENCE; *Report of Commissioners.* On an appeal the report of the commissioners in the condemnation proceedings, and the accompanying map, are proper and legal evidence for the appellant to show what land was condemned.

5. ———— *Witness; Examination.* A reviewing court will not consider the propriety of a question asked, and allowed by the trial court to be answered, when it does not appear to have been answered.

6. ———— *When objection to be made to Question.* Where a witness for one party is asked a question which is itself objectionable, but to which no objection is made, and he makes a direct and appropriate answer thereto, such *answer* will not be stricken out on motion of the adverse party. Objection should have been made to the *question itself,* not to the answer merely.

7. DAMAGES; *Value of Land.* On the trial of an appeal from the assessment of the value of land condemned and taken by a railroad company, evidence is properly admitted showing the value of the land immediately before and after the location of the road.

8. DEED—*Delivery; Title.* A deed takes effect as a conveyance of title from its delivery, and not from the date of its being recorded.

9. PRACTICE—*Error not presumed.* Where no evidence is preserved showing the applicability of instructions asked and refused, to the facts of the case, this court will presume they were correctly refused without examining whether the instructions enunciate correct principles of law.

10. TITLE TO LAND; *Possession.* Possession of land is *prima facie* evidence of title thereto; and an exclusive possession and occupancy for ten years under a claim of absolute title, and where there is no adverse showing, is sufficient evidence for a jury to infer a title in fee simple in the occupant, on an appeal from the appraisement and assessment of county commissioners, of land taken for a railroad.

11. DAMAGES; *Interest.* The measure of recovery is the amount of damages, and interest from the time of the appropriation of the land.

*Error from Bourbon District Court.*

In April 1869 the *Missouri River, Fort Scott & Gulf Railroad Co.*, by its proper officers made written application to the board of county commissioners of Bourbon county to proceed under the act of March 1, 1868, (Gen. Stat., Ch. 23, §§ 81 to 86,) to lay off along the line of said company's proposed railroad as located by them, a route therefor, and "to appraise the value of each portion of any quarter-section or lot of land" necessarily taken for such purpose, and to assess the damages thereto. The commissioners proceeded to act, caused notice to be published fixing the time and place when they would commence their duties as appraisers, and on the 23d of July, 1869, they filed their report in the office of the county clerk, together with a map and profile of said railroad, showing the quantity of each parcel or lot of land condemned by them. Said route was laid out through the S.W.¼ of Sec. 8, and the S.E.¼ of Sec. 17, in Town 25, of Range 25 east, and the damages assessed thereto by the commissioners were $240 and $68, respectively. The whole of the damages appraised were deposited with the treasurer of Bourbon county, as required by § 83, ch. 23, Gen. Stat. *Risden Owen* claimed to own the two quarter-sections of land above described, and not being satisfied with the appraisement and valuation made by the commissioners, he appealed from their determination to the district court, by filing a transcript of the commissioners' report, and giving notice to the railroad company of his appeal. He gave an appeal bond which was approved by the county clerk. He afterward filed a petition, in which he designated himself as plaintiff and the railroad company as defendant. Numerous motions were made to dismiss the appeal, to set aside the petition, etc., all of which were overruled. The case was twice tried by a jury, the last time in November, 1870, when a verdict was rendered in favor of *Owen* for $1,201.18, for which judgment was given. Several questions arose on the trial regarding the competency and admissibility of testimony, and upon instructions given and refused, all of which are stated in

the opinion. A new trial being denied, the Railroad Company bring the case here on error for review.

*Pratt & Blair*, for plaintiff in error:

1. The appeal bond in this case should have been approved by the commissioners themselves, or by the chairman of the board. An approval of said bond by the county clerk is in no sense an approval by the commissioners, and is not authorized by law.

2. The parties to the action in the district court were misstated and transposed so that the cause, as stated, was not properly in the district court. The proceeding before the commissioners was by the Railroad Company to appropriate to its use certain property claimed by Owen. The Company was the *plaintiff*, being the active agent, and maintaining the affirmative. There is no reason, either in practice or principle, why the position of the parties should be reversed on appeal. The case therefore was not properly in court, and should have been dismissed.

3. The court permitted the record of the county commissioners in the condemnation proceedings to appropriate the right of way to be offered in evidence; and also the map of the line of said road, although each was separately objected to by the defendant below. The record is wholly irrelevant and should not have been admitted.

4. The court permitted Caldwell to testify to the damage done to fifteen acres of the land, when the action was for damages to 320 acres. The proof should go to the value, or damage of the *whole* land involved in the particular inquiry. (1 Redfield, 262; 5 Ohio St., 568.) It is no legal method of showing this to call a witness who only knows fifteen acres out of 320, and show the depreciation of the value of this tract in his estimation. There was error too in permitting witness Cole to testify that the land *occupied* by Owen, (160 acres,) was worth $10 less per acre after condemnation than before. This was equivalent to testify that *the tract* was damaged $10 per

acre, or $1,600 in all. This was clearly incompetent. 5 Ohio St., 574; 4 id., 583; Pierce on Am. Rly. Law, 200.

5. In reply to a question to which the answer was not pertinent the court permitted Owen to testify that he "entered" 160 acres of the land in question, and refused to exclude said testimony when requested by defendant's counsel. It needs no argument or authority to establish the principle that parol evidence of an entry of land is inadmissible.

6. The deed to a portion of the land in controversy, dated in 1861, but not recorded until June 4, 1870, about a year *after* the land in question was condemned was incompetent, as it showed no legal title at the time of condemnation.

7. The court erred in refusing to charge the jury, when requested by the defendant below, "that if the plaintiff has only shown possession of the premises, then he is entitled to recover only damages to the possession." And there is undoubted error in the instruction given, that actual and exclusive possession under a claim of absolute title for eight or ten years was sufficient, in the absence of counter testimony for the jury to infer therefrom that the plaintiff was the owner in fee of said lands. Redf., pp. 347, 348; 6 Wis., 639; 11 Pick., 269; 21 id., 258; 2 Am. Rly. Cases, 178, 234, 359.

8. The court erred in instructing the jury to add to their estimate of damages interest at seven per cent. from the date of the appropriation.

*Voss & McComas*, for defendant in error, filed no brief.

The opinion of the court was delivered by

KINGMAN, C. J.: The defendant in error appealed from the determination of the county commissioners of Bourbon county as to the value of the land appropriated by the plaintiff in error for a right of way through the land of the appellant. A trial was had in the district court at the June Term, 1870, which resulted in a verdict for defendant in error. The verdict was set aside and a new trial awarded. This trial took place in November, 1870, and the verdict was for the same party;

and on this last verdict judgment was entered. During the proceedings a number of rulings were made which were excepted to by plaintiff in error, who now brings the case to this court and asks a reversal for the errors in the several rulings so excepted to.

I. The appeal bond was approved by the county clerk. This was correct. The report of the commissioners was in his office. Until it was so filed the owner of the land could not know what the determination of the commissioners had been, so as to decide whether he would appeal or not. When the papers were filed in the clerk's office, he, as custodian of them, was the proper person to approve the bond, not the commissioners who had separated and were in different parts of the county, and had no fixed office or place of official business.

II. The proceedings in the district court were entitled "Risdon Owen v. The Missouri River Ft. Scott and Gulf Railway Company." Plaintiff in error moved to dismiss because the case was wrongly entitled. If true this was no cause for dismissal, only to correct the title of the action, (see code, § 140,) and is no cause for a reversal. But we think the case was rightly entitled.

III. After the jury were sworn the court allowed the plaintiff to sign his amended petition, to which objection was made, and defendant then asked ten days to answer further, which was refused. The petition had been filed for months. To make a clear record it should have been signed, but as the issues were made up on it, the error was not of any consequence. The ruling of the court was correct. The demand for time to answer was frivolous and ought to have been denied.

IV. On the trial the court permitted Owen to introduce in evidence the report of the commissioners in the condemnation proceedings, and the accompanying map; each was separately objected to. It is not apparent how else Owen could get before the jury just what part of his land had been appropriated for the railroad. This was the legal evidence of that fact—a record made by request of plaintiffs in error of what land had been attempted to be condemned. If it was not the only evidence

of that fact, it was the best, and was therefore properly admitted.

V. The witness Caldwell was asked if he knew the land of Owen. He answered, "that portion of it which was south of Marmaton river, amounting to about fifteen acres." He was then asked the value of this fifteen acres just before and just after the location and construction of the railroad. This question was objected to and the objection overruled. Whether it was answered or not is not stated. We will not stop to examine the propriety of a question when it does not appear to have been answered, for if the question was improper, and the answer, if one was given, did not injure plaintiffs in error, it would be no cause of error. The witness may not have known anything about the value of the land and have so answered.

VI. The plaintiff himself testified that he had occupied both quarters of the land for about eleven years, and that before his occupation of the same, the quarter in section eight had been occupied by Andrew Riggs, and that the quarter in section seventeen had been occupied by Harrison Martin; and that Riggs and Martin had each occupied their respective quarters about eighteen months or two years before he took possession. Plaintiff's counsel then asked him of whom he obtained the quarter in section seventeen, and Owen said in reply he "got it of Harrison Martin and entered it." Defendants' counsel asked that the statement be excluded from the jury. This was refused. It was a direct answer to the question, and an appropriate one; and the question itself should have been objected to. The evidence certainly did not show title; and a glance at the instructions reveals the fact that it was not so considered by the court or parties.

VII. The witness Cole was asked the value of the land occupied by Owen in "section eight" as set forth in the petition, just before and just after the construction of the railroad through it, to which he answered, that "it was worth $25 per acre just before, and $10 less per acre just after." The question was correct, and not objected to. The answer was equiv-

alent to saying that the land was worth $25 per acre just before the construction of the road, and $15 per acre just after, which brings it clearly within the rule laid down in *Cleveland & Pittsburgh R. R. Co. v. Ball*, 5 Ohio St., 574, and *Atlantic & Great Western R. R. Co. v. Campbell*, 4 Ohio St., 583, cited by plaintiff in error.

VIII. Plaintiff offered in evidence a deed with covenants of general warranty from Andrew Riggs to himself for the quarter in section eight dated December 11th, 1861, and filed for record and recorded June 4th, 1870. Defendants objected to the reading of this deed in evidence because it showed no legal title at the time of condemnation. The deed conveyed the property from the time of its delivery, and not from the date of its recording, and therefore was properly read in evidence.

IX. It should be understood that but little of the evidence is preserved in the record, and only a part of the instructions are incorporated therein. The plaintiffs in error asked two instructions, but whether they were applicable to the evidence we cannot say, as there is no evidence preserved that would make them applicable.

X. The court among other charges gave the following: "To entitle the plaintiff to a verdict in this case it must appear to you from the evidence that at the time of the appropriation by the defendant of the right of way through the lands in the plaintiff's petition set forth, the plaintiff had some ownership, some estate in said lands. If the evidence shows that at the time of such appropriation, and for eight or ten years previous thereto, the plaintiff was in the actual and exclusive possession and occupancy of said lands, under a claim of absolute title thereto, this is evidence tending to show a title in fee simple in the plaintiff; and if there is no evidence tending to show any adverse title, it is sufficient for the jury to infer therefrom that the plaintiff was the owner in fee of said lands."

The court then instructed the jury "that if they found for the plaintiff they would assess his damages as of the time of the appropriation, with interest thereon at seven per cent per annum from the time of the appropriation."

These are all the instructions that appear in the record, although it appears that others were given. What effect they might have on those given as modifying them we cannot know, nor is it material. To the first paragraph quoted above there is no objection. The second it is insisted is not the law. Whether it was the law of the case, and applicable to the subject-matter of the action, will now be examined. In the proceedings to procure condemnation the corporation is the actor. It applies to the county commissioners to lay off the route as desired by the corporation, and to fix the value of the land which the corporation desires to appropriate, and assess the damages arising from the appropriation. The corporation is the moving cause, and the proceedings by the commissioners are all at its instance, and in its interest, and for its benefit. The object is to compel an unwilling land-owner to part with his property for a just compensation. The corporation is to give written notice to all actual occupants of the land over which the route of the road is designated, where the land has not been purchased by or donated to the company: § 49, p. 203, Gen. Stat. Before the board acts, notice is to be published in a newspaper: § 86, p. 213; and it is also made the duty of the board to appraise and value and assess the damages of each owner separately when there appears to be different interests in the land: § 82, p. 212. In all the proceedings up to the filing of the report the steps are at the peril of the company. While, from the fact that the occupant is entitled to notice, and all others interested are notified by the publication required, it is apparent that those interested in the land may appear if they choose before the commissioners to protect their interests, they are under no obligations to do so, and nothing like a default can be taken against them. If in the discharge of their duties the commissioners err as to the ownership of the land, can it be supposed that the company, by following the error, and paying the wrong person, relieves itself from the obligation to pay the real owner of the land? Land-owners are not compelled to stand by with their title-papers in their hands. The company does not act under any different rules than those that

govern any land-buyer. If he buys from the wrong person he does so at his peril. It is the duty of the railroad company to ascertain who are the owners of the land it desires to appropriate, and it is at the risk of the company that it pays for the land. Such being the state of the case, and the obligation of the company, where no appeal is taken, what change is wrought by the appeal? The law is, that "an appeal shall be had from the determination of the commissioners *as to the value of the land* so appropriated:" § 86, p. 213, Gen, Stat. This is the main issue to be tried. It is probably true that by appropriate pleadings the company would be authorized to show that the appellant did not own the entire land, but that a separate interest is in another, or that some one else owned all the land. But unless such an issue is made by the pleadings, the position of the appellant as to the question of title is not different from what it was before the appeal was taken. The appellant is placed by the law, and by his own action in taking the appeal, in the position of saying: "The appraisement of my land and the assessment of damages made by the commissioners is too small; I desire a retrial of that issue in the district court." Is he bound to show a perfect legal title, such as would entitle him to recover in ejectment? We think not. He was not attempting to recover money of the company. He proved that he was in the occupancy of the land, claiming absolute title. This is *prima facie* evidence of title to land everywhere, as well as to personal property: 2 Greenl. Ev., § 555; *Ward's Heirs v. McIntosh*, 12 Ohio St., 231. It is enough to sustain trespass and to resist a recovery in ejectment until a perfect legal title is shown. That is, an actual possession under a claim of absolute title is *prima facie* evidence of seisin in fee simple, and sufficient till the contrary appears. If this be so, then the instruction complained of is correct. We have not failed to notice the case of *Robbins v. Milwaukee & Horicon R. R. Co.*, 6 Wis., 636, where a contrary doctrine is maintained, and perhaps correctly in that state. Certainly it is not convincing to us as applicable to the law of this state; and so far as we can see, the case stands alone, and unsupported by authority. Cases

St. Joseph & D. C. R. R. Co. v. Orr.

under laws that admit the taking without compensation being first made, and authorize the owner to initiate proceedings to recover damages, are not applicable to our laws. Under our constitution the owner of the land may remain silent till full compensation is made him. Until such compensation is made, no right of way is obtained. A different rule may well apply where the right of way is first appropriated, and the owner of the land left to seek his remedy if he chooses by proving his rights and the injury to them.

XI. It was right to give interest from the time the land was appropriated, and would have made no difference that the company had deposited the amount of the valuation and assessment with the treasurer of the county. The appellant ought not to have accepted the benefit of the adjudication of the commissioners and yet to have alleged it to be erroneous.

We have examined the various rulings of the court, so far as they are material; and finding no error therein the judgment is affirmed.

All the Justices concurring.

