Gilmore v. Norton.

DAVID S. GILMORE, et al., v. H. E. NORTON, et al.

1. PRACTICE; *Motion to Make Petition Definite and Certain.* Where a defendant moves the court to require the plaintiff to make his petition more definite and certain, he should state in his motion wherein and in what particular the petition is not sufficiently definite and certain.

2. PLEADINGS; *Allegations should be in Positive Terms.* Whenever it is necessary to allege the non-existence of a fact, the best and only proper way to do it is to allege its non-existence in positive and direct terms.

3. PARTIES; *Persons owning Property in severalty may unite as Plaintiffs to Enjoin Collection of Illegal Taxes.* Under the statutes of this state any number of persons whose property is affected by an illegal tax or assessment may unite as plaintiffs in an action to enjoin the collection of such tax or assessment, although their interests may be several, and not joint.

4. ———— *Who Should be Joined as Defendants; Waiver.* Under the statutes as they existed in 1871, where a city of the second class levied certain special assessments for street improvements, and the city clerk certified the assessments up to the county clerk, and the county clerk and the county treasurer were proceeding to collect such assessments, *held,* in an action by the abutting lot-owners to restrain the collection of such assessments, that the county clerk and county treasurer were proper parties defendant. Such city ought also to have been joined. But where the defect of parties defendant is not raised by demurrer or answer it must be deemed that the objection is waived.

5. SPECIAL ACTS, *Conferring Corporate Powers.* An act authorizing a city to macadamize, curb, and gutter a street, and to assess the cost of the same upon the lots abutting on such improvement, is an act conferring corporate powers; and an act conferring such powers, limited in its operation to a single city, is manifestly "a special act, conferring corporate powers," and is void, being forbidden by § 1 of art. 12 of the constitution.

6. ———— Where a petition alleges substantially that certain persons in the year 1871 voluntarily, and without any authority, macadamized, curbed and guttered a certain street in a city of the second class, and that afterward the city authorities levied an assessment on the abutting lot-owners to pay for the same, and the answer of the defendants set forth that said assessments had afterward been legalized by a special act of the legislature, *held,* that the legislature has no power by special act to legalize such assessments so as to make them valid and binding against the abutting lot-owners.

7. TITLE TO LANDS; *How Proven.* Actual possession of real estate is *prima facie* evidence of title to the same. Title by deed must be proved by the deed; title by decree must be proved by the decree; title founded on any particular instrument must be proved by such instrument. But *title,* without reference to whether it be by deed, decree, devise, descent, equit-

able estoppel, prescription, limitation, or otherwise, or whether it be a legal or an equitable title, may be proved *prima facie* by showing actual possession.

8. POSSESSION; *What Facts Constitute.* In an action brought to restrain the collection of certain assessments for street improvements in a city of the second class by persons who claim to be the owners of the lots assessed, evidence to the effect that "the said claimants have openly and notoriously claimed said lots for four years past; have, during all that time, taken persons upon said lots and offered to sell the same to them; have, during all that time, given in said lots to the assessor as their own, and paid the taxes on them, and that said lots are uninclosed, and no improvements have ever been made on them," is competent as tending to show that the plaintiffs had sufficient interest in the lots to maintain the action.

9. STREET IMPROVEMENTS; *Ordinance; Estimate of City Engineer.* Under § 31 of ch. 19, Gen. Stat., being the charter of cities of the second class, (§ 68, ch. 100, Laws of 1872,) it is not necessary that an ordinance be first passed requiring that certain street improvements be made before the city engineer can make an estimate of the cost thereof. And when the estimate is made it is not necessary that the estimate shall be made for the whole cost in gross; but it is sufficient if it is for the cost of curbing and guttering per lineal foot, and for macadamizing per square yard. And when the estimate is made it is not necessary that it shall be entered upon the records of the city council in order to make it valid. And that portion of § 31 which requires that the amount of the estimate shall be published with the advertisement for bids, is purely directory.

*Error from Lyon District Court.*

THE action below was brought by *H. E. Norton, Van R. Holmes, O. Y. Hart, F. J. Comstock, Alexander Bailey, George Kraft, Anna J. Carpenter, George Dowdell, Hezrow A. Johnson, Edward Borton, Margaret M. Wright, R. M. Ruggles,* and *P. B. Plumb,* as plaintiffs, against *David S. Gilmore,* as county clerk, and *Noyes Spicer,* as county treasurer of Lyon county. The object of the action was to perpetually enjoin the collection of certain taxes or assessments levied on lots belonging to the plaintiffs to pay the cost of curbing, guttering, and macadamizing the street in front of said lots in the city of Emporia. The averments of the petition are sufficiently stated in the opinion. The defendants first moved to require plaintiffs to make their petition more definite and certain, which motion was overruled. They then demurred, and

their demurrer was overruled. They then answered, alleging that the work complained of had been duly and legally done, and the assessments duly made, and that plaintiffs had so far acquiesced in the same that they should be regarded as having consented thereto, and not now in position to assert error or irregularity. The plaintiffs demurred to this answer, and the demurrer was sustained.

Defendants then filed an amended answer, 1st, denying the allegations of petition; 2d, alleging that the city engineer made and submitted to the mayor and council of the city an estimate of the cost of the improvements in question; that the estimate was in writing; that it was not recorded in the city records, but was lost; that the contract to do said work was made in pursuance of that estimate, and for a much less sum than stated in the estimate; that the city council duly passed and published an ordinance directing the work to be done, and proposals for the work were advertised for and contract let; that the work had been duly completed and accepted by the city. Of this answer plaintiffs admit all, except as to the estimate of the city engineer, and they reply, denying the estimate. Afterward defendants filed a supplemental answer, setting up the act of the legislature legalizing said assessments, (ch. 13, Laws 1872, p. 13.) Plaintiffs demurred to the supplemental answer, which demurrer was sustained. Upon the issues of fact joined as above the case was tried at the March Term 1872. The questions arising upon the competency and admissibility of evidence are fully stated in the opinion. The court found the issues in favor of the plaintiffs, and gave judgment decreeing a perpetual injunction as prayed for in the petition. New trial refused, and the defendants bring the case here on error.

*Buck & Cunningham,* for plaintiffs in error:

1. The facts set forth in the petition are not sufficient in law to maintain the action. The petition sets out a due and valid assessment upon the proper parcels of real estate, and that the city clerk had certified each assessment to the county

clerk, and that the county clerk and treasurer were proceeding to do just what the law enjoins upon them as a duty. The only point attempted to be made in the petition is, that those improvements had been done "without any contract or authority of law." This is not only *not* a fact, but it is not a "statement of fact." It is simply a feeble "conclusion of law," and would not authorize a judgment for plaintiffs. The demurrer only admitted that the plaintiffs owned the lots in question — that Emporia was a city of the second class — that this work had been done — that the city had no funds — and that the assessment had been levied and certified to the county clerk. As these are the only "statements of fact" in the petition, it is clear they are all the facts admitted, and it is equally clear that they do not make a case. 34 N. Y., 268; 4 Selden, 228; 5 Wis., 339; 1 Iowa, 426; 1 Chitty's Pl., 662; Stephen on Pl., 143, 384; 13 How. Pr. Rep., 37; 22 How. Pr., 30; 24 Wend,, 587; 1 Hall, 319; 1 Denio, 568; 23 Barbour, 575; 6 Mich., 60; 7 Cranch, 299; 12 Wheat., 74; 9 Paige, 496; 19 Johns., 60. Unless strictly prohibited a corporation can contract by parol: *City of Indianola v. Jones,* 29 Iowa, 282.

The authority to bring this suit must depend entirely on § 253 of the civil code; for the allegation that it may cast a cloud upon the title, is not sufficient of itself to authorize an injunction: 40 N. Y., 547. We insist that this is not an "illegal tax, charge, or assessment," within the meaning of § 253 of the code. The plaintiffs nowhere allege that this assessment is either unjust or inequitable. Equity will not restrain the collection of a tax because the proceedings were *irregular or void*, unless it be shown to be inequitable. Where it appears that the *established principle* of taxation has been violated, and that *actual injury* will ensue, or that the tax was levied for an unauthorized purpose, equity will, in proper cases, interfere to prevent the wrong; (14 Wis., 618, 620, 630; 15 Wis., 9; 16 Wis., 1, 18; 17 Wis., 284;) but this is not such a case.

2. The court erred in overruling the demurrer to the peti-

tion. The first ground of demurrer was, that the petition do es not state facts sufficient to constitute a cause of action. The plaintiffs must show *by their petition* that they are entitled to the injunction. Code, § 238; 11 Paige, 166; Hilliard on Injunction, §§ 71, 72; 21 Mich., 263. 2d, The plaintiffs are not "united in interest," in the sense of that term as used in § 36 of the code; nor have they an "interest in the subject of the action," as contemplated in § 35, for in no possible contingency would the failure of one to pay, increase the burden imposed upon the others. This is not a general tax upon the property of all the plaintiffs, but a special charge upon the front foot, of certain particular parcels. There is no community of interest. · 3d, The City of Emporia was the real party in interest, and the clerk and treasurer of Lyon county were but nominally defendants; and the city should have been made a party defendant; 1 Kas., 293, 299; 5 Kas., 90, 114, 117; 2 Story's Eq. Jur., § 1526.

3. The court erred in sustaining the demurrer to the supplemental answer setting up ch. 13 of the laws of 1872, entitled "An act to legalize proceedings and assessments of the mayor and councilmen of the city of Emporia in 1871." The court below held that special act a violation of art. 2, § 17, of the state constitution. This point has been so thoroughly refuted that we do not propose to discuss it: 1 Kas., 178, 273; 6 Ohio St., 176; 5 Ind., 4; 23 Ill., 202; 11 Am. Law Reg., 349. The court also held this special act void, as violating so much of art. 12, § 1, of the constitution as is in these words: "The legislature shall pass no special act conferring corporate powers." We insist the *publishing* of the engineer's estimate was in no sense a jurisdictional step, and its omission at most a mere irregularity which lawfully might be and was cured by the special act.

The next point is, did this special act confer "corporate" powers? We insist it did not. Corporate power simply means legislative sovereignty. It does not mean every ministerial act a corporation may do. In other words, all powers of a corporation are not "corporate" powers: 18 Grat., (Va.,)

517; 6 Dana, 400; 20 Ohio St., 36; 3 Head, 317. If any power was conferred it was upon the plaintiffs in error, who are in no sense a corporation. The only power the city ever assumed to exercise in the premises was to macadamize, curb, and gutter a part of the principal street therein, and assess the expenses thereof on adjoining lots; and that power it possessed in as great a degree *before* as *after* the passage of this special act. This act does not assume to confer a *new power*, but to legalize the manner of procedure and to waive the mistakes which had occurred in the exercise of a power previously granted. And this, it was competent for the legislature to do: 36 Penn. St., 29; 15 Ill., 202; 18 N. Y., 38; 5 Gray, 180; 4 Dana, 154; 22 Ind., 491. Conceding that the assessments were illegal previous to the passage of the curative act, (we claim, however, that the city had substantially complied with the law and that the assessments were valid and binding when made,) they were so illegal not for want of power generally in the legislative department of the city to make such assessments, but because of informality and irregularity in the exercise of that power in this particular instance: 20 Ohio St., 36; 11 Ohio St., 230; 3 Head, 317. If this act did confer "corporate" powers, then human ingenuity would be at fault to conceive of a constitutional curative act in relation to corporations; because all such acts aim to place the corporation in a more advantageous position than that before occupied. Would authority given the city of Emporia, prior to all these proceedings, to dispense with the publication of the estimate of the city engineer, have been an act conferring "corporate" powers? Is the peculiar *manner* of doing an act, the power to do it? We think not. What the legislature might have dispensed with, it may cure by retroactive legislation: Cooley's Const. Lim., 371, 379. Any ratification by a legislature is good if the original defect is merely lack of legislative consent; and even if it were *void ab initio:* 26 Wis., 23; 31 Cal., 26; 32 Conn., 118; 23 Wis., 590; 21 How., 414. This court, as well as every other of our supreme courts, has so uniformly held with C.

J. Marshall, (*Dartmouth College v. Woodward*, 4 Wheaton, 625,) that "in no doubtful case will this court pronounce a legislative act to be contrary to the constitution."

4. The court erred in admitting the said secondary evidence as to plaintiffs' possession of the lots. Possession to be evidence of title must be "actual," and not "constructive." 1 Greenl. Ev., §§ 82, 84, 87; 9 Wheaton, 563; 12 Mich., 241.

5. The court erred in ruling out and refusing to receive the evidence offered by the defendants. The exhibits offered by defendants, and proof of which was waived by plaintiffs, showed a careful compliance on the part of the city with all the requirements of the statute except as to publication of the engineer's estimate. The record does not show that either the original estimate or a copy thereof was produced. This the defendants below were relieved from doing, having plead its loss and offering to prove that there was never any record made of such estimate, and the further offer to prove by the best possible evidence what the estimate was. The publication of that estimate was not necessary to confer upon the city power to "make a contract." Sec. 31 of the city charter, (Gen. Stat., 169,) is directory merely, and should receive such a construction as will meet and carry out the object intended: 9 Kas., 155, 674. "Unless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the *manner* to be essential to the validity of the proceedings, it is to be regarded as directory merely." *Jones v. State*, 1 Kas., 279; 9 Kas., 569.

There is no law requiring the estimate, or, if orally "submitted to the council," the purport thereof to be spread upon the records of the corporation; neither is it anywhere made the duty of the clerk to *record all* the proceedings of the council or papers "submitted to the council." We are not advocating carelessness; but this is a case where parties who have received the benefits of these improvements, and silently awaited their completion, now, with unclean hands, invoke the extraordinary aid of a court of equity that they may do inequity.

*Ruggles & Plumb,* for defendants in error:

1. The petition shows that the plaintiffs herein are the real parties in interest in the result of the suit, and does not show that there is any other party in interest who should be made plaintiffs, and without whose presence, as plaintiffs, either the present plaintiffs or defendants could be in any manner prejudiced by the result of this suit, or whose rights would be lost by not being made parties to the suit. Code, §§ 35, 37, 41.

There is no defect of parties defendant, for it certainly could not be to the interest of the city of Emporia to have an illegal tax fastened upon and collected from her citizens; and nothing was demanded of her. Therefore she was not a necessary party defendant. 6 Wheaton, 551, 559; 18 Ind., 290.

There is no misjoinder of causes of action. Code, § 253, provides for just such a case as the one at bar.

The petition states facts sufficient to constitute a cause of action. It shows that the defendants are taking steps to collect an illegal tax. Counsel for plaintiffs in error insist that the allegation in the petition, that the sidewalks were built [without any authority of law] is not, as to the words included in brackets, an allegation of a fact, which is very true. But it is an allegation of the absence of a material fact which must necessarily have existed to authorize the collection of the tax sought to be enjoined; and the non-existence of a thing that never did exist cannot be shown by the statement of facts that do exist. Neither can it be shown that a person did not do a thing by showing that he did do other things; but it can only be positively shown by a negative averment that he ever did the thing. The petition in substance shows that certain persons, without any contract, or any authority of law whatever, constructed said sidewalks; and we submit that a person cannot do a gratuitous act and afterwards recover compensation for it at law.

2. That part of the answer to which plaintiffs' demurrer was sustained does not state that the plaintiffs ever had any knowledge, or that they even suspected, or had any reason to

suspect that there was any intention on the part of anybody to make their property pay for the building of said sidewalks; nor that the persons building said sidewalks expected their pay from that source, or that they expected any pay at all, or that they had not already been paid, or that their action in the building of said sidewalks was influenced in any manner or to any extent whatever by the action of the plaintiffs, as set out in said answer. Before one can insist upon an estoppel *in pais*, by the acts of another, he must show that those acts, whether active or passive, were done with a full knowledge of all the facts in the case, and with a design to mislead him, and that by honestly relying on those acts he was misled to his prejudice, and has placed himself in a condition that he would not have been in but for a reliance on said acts: 6. Kas., 308, 309; 8 Kas., 189. None of these facts appearing in the answer, and the plaintiffs having no control over the streets, and no authority to forbid any person from working thereon, no estoppel was shown by the answer. Besides, the right to an injunction to restrain the collection of an illegal tax, charge, or assessment, is no longer a question of equity but is a statutory right: Code, § 253. This right is not made to depend upon any contingency, but is absolute, the illegality of the tax being shown. Therefore we claim that the doctrine of estoppel is unknown. Equity does not prevail in this class of cases in this state.

3. We submit, that if the legislature could not in the first place *by a special act* authorize the single city of Emporia to do what no other city could do, to-wit, to take the property of her citizens without their consent to pay parties for the building of sidewalks that should be built without taking such steps as would have to be taken with other cities of the same class before pay could be collected therefor out of the property of her citizens. Now this being so, the legislature could not, after such sidewalks were built without such steps having been taken as were at the time they were built required by law to be taken in the city of Emporia, dispense with the necessity of such steps having been taken, and

authorize the collection of the pay for the building of such sidewalks. Or in other words, we submit that what the legislature could not authorize in the first instance, it could not legalize after it was done. What the legislature cannot in the first instance *dispense with*, it cannot cure by a subsequent act: Cooley's Const. Lim., 371. Then we submit, for the legislature to pass a special act giving the single city of Emporia a power that no other city of the same class possessed, would be conferring corporate powers by special legislation. If it would not, how could corporate powers be created by special legislation? Our constitution forbids the conferring of corporate powers by special legislation: Constitution, art. 12, §§ 1, 5; 4 Kas., 124, 145; 5 Kas., 603; 20 Ohio St., 18.

4. Possession is *prima facie* evidence of ownership: 8 Kas., 409; 12 Ohio St., 231, 237; 7 Wheaton, 59, 105; 9 Wend., 223. As to what constitutes possession, see Angell on Lim., 4th ed., pp. 397, 400; 25 Mo., 197; 4 Iowa, 18.

5. Such an estimate as the defendants offered to prove was made, (that the sidewalks would cost thirty-five cents per lineal foot,) is not such an estimate as the statute contemplates. The statute contemplates a round, complete estimate, in dollars and cents, of the entire cost of the work, leaving no action to be taken on the part of any one to arrive at the result of the engineer's conclusions. Neither courts nor the city officers take judicial notice of the size of the lots, blocks, or squares of the city, and therefore could not tell from such an estimate what the cost of the work would be without going to the recorded plat of the city to ascertain the number of lineal feet in the sidewalks, and then concluding from said estimate of one foot what the entire cost of the work would be. We contend too that the estimate was made at the wrong time, and therefore amounted to nothing; for we hold that the legislature contemplates first, an ordinance to make the improvements, and then an estimate of the cost, and then an advertisement for proposals. If such was the case, the premature estimate amounted to nothing. Again, the city can only speak by ordinance, or resolution; and that their verbal

order to the engineer to make an estimate would amount to nothing. The offer to prove the estimate, did not include an offer to prove that the estimate was made upon the same specifications afterwards adopted by ordinance; and unless it was upon the same, the estimate would be of no force, and irrelevant. We further hold that the failure to publish the amount of the estimate in the advertisement for bids was fatal, and rendered all subsequent proceedings void. 18 Ohio St., 85; 17 Wis., 442; 18 Wis., 411; 5 Me., 95; 6 Kas., 306.

The opinion of the court was delivered by

VALENTINE, J.: On the 11th of October 1871 the plaintiffs in the court below (defendants here,) filed their petition against the plaintiffs in error alleging that they were the owners, each in severalty, of certain real property upon Commercial street in the city of Emporia, a city of the second class; that the city had no funds; that divers persons had done macadamizing, curbing, and guttering on said Commercial street, and abutting upon plaintiffs' lots, "without any contract or authority of law whatever, to do the same," and were seeking pay therefor; that the mayor and city council had levied an assessment upon plaintiffs' said lots to pay for said work; that the city clerk had certified said assessments to the county clerk, to be placed upon the tax-roll for collection; that the county clerk and county treasurer, defendants aforesaid, were proceeding to collect such assessments, and prayed injunction to restrain the collection of said tax. The injunction was granted. On the 3d of November the defendants filed a motion to require the plaintiffs to make their petition more definite and certain, which motion was overruled, and excepted to. We think the motion was rightfully overruled, as the defendants did not state in their motion wherein or in what particular the plaintiffs' petition was indefinite and uncertain.

1. Motion to make petition definite.

On the 9th of January 1872 the defendants filed their demurrer to the plaintiffs' petition, assigning three several grounds, which demurrer was also overruled and excepted to.

We think the demurrer was also rightfully overruled. The grounds alleged for demurrer were, 1st, that the petition did not state facts sufficient to constitute a cause of action; 2d, that there was a misjoinder of parties plaintiff; 3d, that there was a misjoinder of parties defendant. The ground upon

**2. Petition; pleading; statement of fact; denials.** which it is claimed that the petition does not state facts sufficient to constitute a cause of action is, that the petition simply alleges that the persons who made the improvements made them. "without any contract or authority of law whatever to do the same," and does not allege any other sufficient reason why the said assessments are void. The counsel for plaintiffs in error claim that "this" allegation "is not only *not* a fact, but it is not a 'statement of fact;' it is simply a feeble 'conclusion of law,' and would not authorize a judgment for plaintiffs" below. We think however the allegation is sufficient. The allegation that said persons made the improvements "without any contract," is incontestably sufficient; and if the words, "of law," had been omitted from the other part of the allegation, the whole of it would clearly have been sufficient, and these words we think may be treated as surplusage. The allegation would then read that said persons made the improvements "without any contract or authority whatever to do the same." Whenever it is necessary to allege the non-existence of a fact the best and only proper way to do it is to allege its non-existence in positive and direct terms. It is never proper to allege the non-existence of a fact by simply alleging the existence of other facts. The existence of these other facts may in many cases prove the non-existence of said first-mentioned fact; but to allege their existence for that purpose only, is simply to allege indirectly and inferentially the non-existence of such

**3. Joinder of parties in action to enjoin collection of illegal taxes.** fact, which is never considered a proper mode of pleading. Without now determining whether the question of a *misjoinder* of parties plaintiff or defendant can be raised on demurrer, we would say that there was no misjoinder of parties in this case. Under our statutes any number of persons whose property is affected by an illegal

tax or assessment may unite as plaintiffs in an action to enjoin the collection of such tax or assessment, although their interests may be several and not joint: Code, § 253; *Bridge Company v. Wyandotte Co.*, ante, p. 326. The county clerk and the county treasurer, under the allegations of this petition were 4. Defect of parties defendant; proper parties defendant. They have authority waiver. under the statutes to put all taxes and assessments like those in controversy on the tax-roll and collect the same. (City Charter, Laws of 1871, ch. 62, §§ 17, 26, 27; Laws of 1872, ch. 100, §§ 33, 43, 44.) And in this case they were proceeding to exercise such authority. They were proceeding to commit the very injuries of which the plaintiffs in this action complain. Whether the city of Emporia, or the persons who made the improvements, were also necessary or proper parties, is not raised by said demurrer. The defendants do not demur because of a *defect* of parties defendant, but they demur because of a *misjoinder* of parties defendant. And as the defendants did not raise the question as to whether there was a *defect* of parties plaintiff, or defendant, by either demurrer or answer, it must be deemed that they waived the same: Code, § 89, subdiv. 4, and § 91.

It is claimed that the court below erred in sustaining the plaintiffs' demurrer to the defendants' supplemental answer. This supplemental answer was a separate and independent 5. Special acts, conferring corporate powers, are void. pleading, and it did not deny any allegation of the plaintiffs' petition. And the only matter that it set up in avoidance of the allegations of the petition was the passage of a special act of the legislature entitled "An act to legalize proceedings and assessments of the mayor and councilmen of the city of Emporia in 1871." This act took effect March 27th, 1872; (Laws of 1872, ch. 13, page 13.) The allegations of the petition are substantially that certain persons voluntarily, and without any authority, macadamized, curbed, and guttered Commercial street in the city of Emporia, and that afterwards the city authorities levied an assessment on the adjacent or abutting lot-owners to pay for the same. At the time the work was

6. Corporate powers defined. done (according to the allegations of the petition,) neither the city of Emporia nor the lot-owners were liable to pay for the same, and the assessment against the lot-owners was of course absolutely null and void. Whether the legislature can by a special act make this assessment *valid*, is the question now presented to us for our consideration. The question however is not whether the legislature has the power by special act to make the city of Emporia liable for the work done, but it is whether the legislature has the power by special act to make the abutting lot-owners liable. We do not think the legislature has any such power. (*Baltimore v. Horn*, 26 Md., 194.) The constitution of this state provides that "The legislature shall pass no special act conferring corporate powers;" (const., art. 12, § 1;) and it also provides that "all laws of a general nature shall have a uniform operation throughout the state;" (const., art. 2, § 17.) Now to authorize a city to macadamize, curb and gutter a street, and to assess the cost of the same against the abutting lot-owners, is certainly conferring corporate power. Any power conferred upon a corporation, and to be exercised by the corporation, is a corporate power. A power that would not be a corporate power if exercised by an individual becomes a corporate power when exercised by a corporation. The power of a city to pay for work which was done without any authority — work for which the city was, at the time it was done, (according to the plaintiffs' petition,) under no legal or moral obligation to ever pay, is in our opinion a very high corporate power. But the power of a city to enforce the abutting lot-owners to pay for such work, when neither the city nor the abutting lot-owners at the time the work was done were under any legal or moral obligation to ever pay for the same, is most certainly one of the very highest of corporate powers. Such a power has never been conferred upon any class of cities of the state of Kansas. In every other city of this state certain antecedent and prerequisite conditions must exist before the city has the power to make special assessments against the abutting lot-owners for street

improvements. The city itself must legally authorize the improvements to be made, and become itself legally liable to pay for the same, before it can legally enforce the abutting lot-owners to pay for the same. Can the legislature by a special act confer upon the single city of Emporia powers not possessed by any other city in the state of Kansas? We think not. (*Atchison v. Bartholow,* 4 Kas., 124, 141, 145, 146; *Wyandotte v. Wood,* 5 Kas., 603; *State v. Cincinnati,* 20 Ohio St., 18, 36.) Could the legislature even when passing general laws for the government of cities of the second class exempt the city of Emporia from their operation? Could they prescribe a rule for a certain class of cities, and then say that one of that class should be exempted from the rule? If so, the law could hardly be said to be a general law; and it certainly could not be said to have a uniform operation throughout the state. (*Darling v. Rogers,* 7 Kas., 592.) It will be conceded that the legislature may in some cases pass general curative laws for corporations. It is possible also that they may in some rare cases pass special curative laws for corporations. But the present is not one of such cases. All that we now decide is, that the legislature cannot pass a special act which will cure all of such irregularities as are alleged in the plaintiffs' petition.

It is also claimed that the court below erred in admitting certain evidence which tended to show the interest that the 7. Title to lands, plaintiffs had in the lots upon which the assess-how proven. ments were made. The plaintiffs in error claim that the evidence was only secondary evidence. We perceive no error however in the ruling of the court upon this evidence. Actual possession of real estate has always been *prima facie* evidence of title to the same; (*Gulf Rld. Co. v. Owen,* 8 Kas., 409, and authorities there cited; 1 Phil. Ev., (3d ed.,) 452; Cowen & Hill's Notes, No. 297;) and this is just what the evidence tended to establish. And for this purpose the evidence was original, and not secondary evidence. The evidence did not show that there was any better evidence back. Of course, title by deed must be proved by the deed; title by a

33—10 KAS.

decree of court must be proved by the decree; title founded on any particular written instrument must be proved by such instrument. But title, without reference to whether it be by deed, decree, devise, descent, equitable estoppel, prescription, limitation, or otherwise, or whether it be a legal or an equitable title, may be proved *prima facie* by showing actual possession. But as to some of the lots it is claimed that no actual possession has been shown. This may possibly be true, but still the evidence objected to tended to prove actual pos-

**3. Proof of possession. Evidence of title.** session and title, and that was clearly sufficient to authorize its admission. Said evidence was, according to the record, "to the effect that said claimants have openly and notoriously claimed said lots for four years last past; have during all that time taken persons upon said lots, and offered to sell the same to them; have during all that time given in said lots to the assessor as their own, and paid the taxes on them. The said lots are uninclosed and no improvements have ever been made on them." Now, it is not necessary that a person should always be actually upon real estate in order that he may be in the actual possession of the same. Nor is it necessary that he should actually reside thereon for that purpose. Neither is it necessary that there should be any improvements on the property. (*Ewing v. Burnett*, 11 Peters, 41, 52, 53.) There may be an actual possession of uninclosed and unimproved land. (*Longworthy v. Myers*, 4 Iowa, 18, 20, 21, and cases there cited.) All that is necessary to constitute an actual possession of such land is, that visible and notorious acts of ownership should be exercised over the premises; (*Draper v. Shoot*, 25 Mo., 197, 203; Angell on *Limitations*, (4th ed.,) §§ 397, 398, and cases there cited.) The payment of taxes is always very strong evidence, *prima facie*, of ownership. All visible and notorious acts of ownership may be shown to the jury for the purpose of proving ownership. Whether the evidence adduced in any given case is sufficient to prove ownership or not, is a question for the jury. This kind of evidence however, as we have already stated, is only *prima facie* evidence, and must always give

way to stronger evidence. In this case however it would seem that evidence showing that the plaintiffs below had formerly paid the taxes on said lots, claiming them to be their own, ought to be competent evidence, for this action itself is an action to determine whether a certain kind of taxes are valid or not. Indeed, it would seem that such evidence ought to be competent to prove ownership in any case, and against any person who could not show a better title in himself, or in the person under which he should hold. It would seem that such evidence ought to be sufficient evidence of title as against any mere wrongdoer. Said evidence objected to undoubtedly tended to show that the plaintiffs exercised visible and notorious acts of ownership over said lots, and it was therefore competent evidence. But even if it were shown that the plaintiffs had no title to the lots, still as they were in possession of the property, exercising acts of ownership over it, and claiming it to be their own, they had an inchoate title that would in time under the statute of limitations ripen into a complete and absolute title. And evidently, while this inchoate and incomplete title to said lots is growing into a complete and absolute title, the plaintiffs ought to have a right to see that no illegal tax or assessment should be imposed upon said lots to eventually override and overthrow their own inchoate title.

It is also claimed that the court erred in excluding certain evidence offered by the defendants below to prove that the 9. Estimates of cost of city improvements. City engineer. city engineer made certain estimates of the costs of the said improvements before the same were made. In this we think the court did err. There was no irregularity in making said estimates. The contracts were afterwards made with reference to them, and for just such work as the estimates were made, and the work was done for much less than the estimated cost thereof. It is true, that the estimates were made before any ordinance was passed requiring the improvements to be made, but this makes no difference. In fact, we think the estimates ought to be made first, as the city council could then act more intelli-

Gilmore v. Norton.

gently in passing the ordinance. The, estimates were made however at the request of the mayor and council, but we do not suppose that it was necessary that any request should have been made. We suppose it would be sufficient if made on the engineer's own motion. The only thing essential is, that the estimate should be made, and this was done. (See Gen. Stat., 169, ch. 19, § 31.) It is also true that these estimates were for the cost of curbing and guttering per lineal foot,. and the cost of macadamizing per square yard; and neither was for the cost in gross. The way the estimates were made was probably the best way, and it was certainly a sufficient way. It was definite enough, and specific enough, for any person. It is also true that these estimates were not entered upon the records of the city council, but we know of no statute that required that they should be so entered. But if there had been such a statute, can it be supposed that a failure to record them would invalidate them? But if it be held that the court erred in excluding said evidence, still it is claimed by the defendants in error that the advertisement for bids, and all after-proceedings, are void, because the amount of said estimates was not published with said advertisement for bids. It is true that the statute requires that the amount of the estimates shall be so published; (Gen. Stat., 169, ch. 19, § 31.) And it is equally true that it was not so published in this case. But we think the statute in this respect is purely directory. It is entirely unlike statutes which require a thing to be done as a condition precedent. For the error in excluding said evidence, the judgment of the district court is reversed, and a new trial awarded.

All the Justices concurring.