## F. W. GILES v. FREDERICK ORTMAN.

1. ACTUAL POSSESSION; *What Facts will Prove.* Proof that a party was using a lot to keep his wood and buggy on, that he had dug a trench on it for a wall, and that he had dug out in front of it for an area, is sufficient to sustain a finding that he was in actual possession of the lot.

2. FINDING; *Powers of Officers; Evidence to Sustain.* Proof that certain officers of an association have done an act which is within the scope of the powers ordinarily conferred upon such officers, is, in the absence of any testimony tending to show a limitation of their powers, sufficient to sustain a finding that the association did the act.

3. STREETS AND ALLEYS; *Dedication to Public Use; Proof of.* Where it is proven that parties, preparing a plat of a town for acknowledgment and record, intended to lay out a certain strip of ground as an alley, and thus dedicate the same to the use of the public, and took certain steps to carry that intention into effect, very slight testimony will sustain a finding that such dedication was in fact made.

4. ACTION TO QUIET TITLE; *Interest of Plaintiff.* A party in actual and lawful possession of real estate may, under Section 594 of the Code, maintain an action against any person who claims an interest therein for the purpose of determining such adverse interest.

### Error from Shawnee District Court.

ACTION brought by *Ortman* to quiet his title to a certain lot in the city of Topeka, designated in his petition as "Lot 169 on Kansas Avenue," and having a frontage on said avenue of twenty-five feet. The case was tried before A. L. W., judge *pro tem.*, at the June Term 1869, and judgment was given quieting *Ortman's* title to the north twenty feet, leaving *Giles'* title or claim to the south five feet undisturbed. From the findings of fact and bill of exceptions it appears that the "Topeka Association" was organized in 1854; that

in 1854 or 1855 said association laid off and platted its grounds into lots, blocks, streets and alleys, called the city of Topeka; that on said plat the north twenty feet in controversy were platted as and for an alley, and the south five feet were included in the lot adjoining on the south; that said association caused their lands to be re-platted in 1856, and the plat thereof to be lithographed; that on said lithographed plat the whole twenty-five feet in controversy were designated as lot "169;" that said lithographed plat remained unchanged until March 30th 1859, when the president of said association, by the direction of a majority of the trustees, and with the intention to make room for an alley twenty feet in width, erased or run the mark of a pen through the figures "169" on said lithographed map, and thereupon said map was certified, acknowledged and recorded; that in 1865 said association conveyed said south five feet to Thomas H. Swope; that in 1866 the city of Topeka by ordinance, and for a valuable consideration, relinquished to said Swope all its right and title to said north twenty feet; that Swope sold the whole of said twenty-five feet to *Ortman*, describing the same as "lot 169," and that in 1867 the city of Topeka deeded by quit-claim all its interest in said "lot 169" to *Ortman*; that *Ortman* owned and occupied the lot adjoining said premises on the north, and after purchase from Swope he kept his wood and buggy on said twenty feet and built a sidewalk along the front thereof. It also appears, that said twenty-five feet were assessed in 1861 as "lot 169," and sold in 1862 for the nonpayment of taxes levied thereon for said year 1861, and that on the 11th of June 1864 a tax deed for said lot was duly executed to *Giles* for said lot; that said deed was duly recorded, and that *Giles* had paid all the taxes assessed on said "lot 169" from 1860 to 1867, and that this action was commenced in February 1868. The court found as conclusions of law, that "from about the middle of December 1857 until the 11th of April 1866, said north twenty feet was an alley of the city of Topeka, duly dedicated to the public use;" that said twenty feet during said period of time

was not subject to taxation, and that as to said twenty feet the tax deed under which *Giles* claimed was void; and, finding that *Ortman* was in possession and occupancy, gave judgment quieting his title to said twenty feet. Both parties excepted to the findings and judgment. *Ortman* brought the case here on error, (9 Kas., 324,) objecting to the judgment because it did not adjudge *Giles'* claim to the south five feet void, and quiet his (*Ortman's*) title thereto; but this court affirmed said judgment. *Giles* now brings the case here by petition in error, complaining of so much of said judgment as gave to *Ortman* any part of the premises in dispute.

*Martin & Burns*, for plaintiff in error:

1. The court erred in finding that Ortman was in the possession and occupancy of the lot. The only evidence tending to prove possession and occupancy is, that after getting his deed from Swope he used the lot for keeping his wood and buggy on, that he built a sidewalk on Kansas avenue in front of the lot, that he dug a trench on the same for a wall and filled up in front to bring the said walk to the grade, and dug out in front for an area, and paid taxes on same in 1868. We do not think this evidence was sufficient to authorize or warrant the court in finding that Ortman was in the possession and occupancy of the lot. To constitute possession and occupancy there must be an actual, continued, visible, notorious and distinct possession, under a claim or color of title *prima facie* valid, and it must be of such notoriety that the owner of the land may be presumed to have notice of it. 6 Serg. & Rawle, 21; 2 Johns., 230; 3 Metc., 125; Tyler on Eject., 870.

2. The court erred in finding, that from about the middle of December 1857, and until the 11th of April 1866, the north 20 feet front, by 130 deep of the property known as lot 169, was an alley of the city of Topeka. This finding is material. If correct, it forms the only basis of Ortman's title to the 20 feet of land in dispute. If incorrect, then he had no color of title, and cannot recover in this action. The

court finds that up to the 30th of March 1859, at which time the erasure was made, the map had been and was adopted by the association as its plat or map of the city, with the property in dispute regularly platted and numbered as lot 169. The evidence further shows that the erasure of "169" was done by the president of the association at an informal meeting of the board, and without consulting the members of the association, which at that time contained 100 members; and while there was evidence that the intention was to provide for a twenty-foot alley, it shows that no record was made of the matter, and no disposition made of the remaining five feet of the lot. Upon this evidence the court finds that the erasure was legal, being duly authorized, and by that means the north 20 feet front by 130 deep of the property known as lot 169 became and was an alley of the city of Topeka. It may be true as found by the court that the erasure was authorized by the verbal consent of a majority of the directors of the association; yet this by no means proves that the trustees or directors had authority to direct or assent to any such change or alteration of the map: and we insist that there was no evidence tending to show that these trustees or directors had any such authority. There was no act of incorporation or by-laws of the association showing that they had this authority. How then could the court infer from this evidence that this act of the president was authorized and legal? But even if it can be inferred from the evidence that these trustees or directors had authority to change the plat of the city as adopted by the association, did the act of drawing a pen through the figures designating the number of the lot, without making any record of the same on the books of the association, or any note of it on the map, make an alley of the north 20 feet of the lot, and thereby dedicate the same to the public? We think not. There are but two modes of dedication — 1st, statutory dedication; 2d, common-law dedication. Statutory dedications are made only by pursuing substantially the course prescribed by the statute, which required the proprietor of the city or town to make out an

accurate map or plat thereof, particularly setting forth and describing all the parcels of ground within such city or town reserved for public purpose by their boundaries, course, and extent, whether they be intended for avenues, streets, lanes, alleys, etc. Comp. Laws 1862, ch. 24, §§ 1 to 11. We claim that there was no dedication of this ground for an alley as required by statute, and no common-law dedication, because there was no evidence that the public ever used or occupied it. Dillon on Municip. Corp., 476, 478.

3. Ortman does not show any title in him to the property whatever. If the property in controversy was an alley, the city of Topeka had no authority to dispose of it. (See Dillon on Munic. Corp., 495, and authorities there cited.) If the property was not an alley, then it was subject to taxation as lot 169, and the tax deed conveyed a good and sufficient title to Giles for the whole of the lot, and the court erred in giving judgment in favor of Ortman for the north 20 feet thereof.

*A. H. & M. H. Case*, for defendant in error:

This case we supposed was fully disposed of in the case of *Ortman v. Giles*, 9 Kas., 324. We think the court below erred in not giving Ortman the whole of lot 169. The record shows he was the owner of it, and in possession at the time the suit was commenced, and that the lot was in the years 1860 and 1861, when the taxes were assessed upon it, an alley as to 20 feet, and then unknown as lot 169; and we can only say in this case, as we did in the other, that the description was defective, and the tax deed was therefore void. Blackw. Tax Titles, 123 to 127. When a part of the land sold is liable to sale and the residue is not, the sale is void. Blackw., 280 to 282.

The opinion of the court was delivered by

BREWER, J.; This was an action brought by Ortman in the district court of Shawnee county, to quiet title. The case was tried by the court without a jury. Special findings of fact were made, and a decree entered in favor of the plaintiff,

quieting his title to a portion of the property, and refusing him any relief as to the remainder. He thereupon commenced proceedings in error in this court, but we held that there was no error in the record of which he could complain and affirmed the judgment. *Ortman v. Giles*, 9 Kas., 324. The defendant Giles now alleges error, and seeks a reversal of the judgment so far as it quieted the title of the plaintiff to any portion of the property.

Two or three questions are presented for our consideration. The first is this: The court found that Ortman was in possession. It is insisted that the testimony does not sustain this finding. The bill of exceptions recites that it was proved that the plaintiff "used the lot for keeping his wood and buggy on," that he "built a sidewalk on Kansas avenue in front of said lot, and being two or three inches on said lot, and paid for same; also dug a trench on same for wall, and filled up in front to bring sidewalk to the grade, and dug out in front for area," etc. This, to say the least, is some testimony tending to show possession, and in the absence of any other, sufficient to sustain the findings. *Gilmore v. Norton*, 10 Kas., 491.

The plaintiff in error further claims that the court erred in its finding that the property in dispute was, from December 1857 to April 11th 1866, an alley of the city of Topeka. It was proved that the plat, as adopted by the town association, described these premises as a part of a lot, but that before the same was acknowledged or recorded the president, by the authority of the trustees, made the change. It is claimed that no authority was shown in the president or trustees. It was proved that the association had a constitution and by-laws for its government, but neither were in evidence, so that the duties and powers of the defendant officers, as therein prescribed, were not shown. But it was also proved (such is the language of the bill of exceptions,) that the association had "for officers a president, secretary, and seven trustees to *manage the affairs of the association*." The management of the affairs of an association is shown to be in certain officers.

They perform an act which is within the scope of the powers ordinarily entrusted to such officers. No limitation on their powers is shown. The association is not questioning either their power or the propriety of the act. In a contest between third parties the district court finds that their act was within their authority. We see no reason to reverse this finding.

It is further claimed that there is not sufficient proof that the president of the town association did make the change, or perhaps more correctly that the acts shown do not amount to a change and a dedication of the ground for public use as an alley. It was proved that prior to the lithograph plat, that is, the plat adopted by the association, a plat had been prepared, upon which these twenty feet (the strip in contro-troversy) were platted as an alley; that by the lithograph plat the twenty feet and five feet adjoining were platted as a lot, and numbered as "Lot 169" on the plat; that at the time the change was made, which was before the acknowledgment of the plat, the president, under the direction of the trustees, with the intention of making room for an alley twenty feet in width, "erased or run the mark of a pen through the figures '169' on the lithograph plat;" that on the same day the plat was acknowledged, and filed for record; that afterward, and in 1865, the president as special trustee executed a deed for the five feet adjoining the premises in controversy, and forming a part of lot 169 as platted on the lithograph plat, which was described as adjoining an alley. It was proven that the intention was to dedicate; that this dedication was made, and that afterward it was recognized. We think the grantors themselves might upon such testimony be estopped from denying the dedication. Certainly, as between third parties a finding of a dedication will not be disturbed.

One point more remains for consideration. It is claimed that if this was an alley the city could not convey it away, and that therefore Ortman proved no title in himself. Whether the ordinance and quitclaim deed of the city transferred the fee, or operated merely as a license to occupy, we

do not deem it necessary now to decide, for in either event Ortman had a lawful and actual possession, and a right to have any adverse interest determined. Civil Code, § 594; *Eaton v. Giles*, 5 Kas., 28; *Brenner v. Bigelow*, 8 Kas., 496. The judgment of the district court will be affirmed.

All the Justices concurring.